57 Cal.Rptr.3d 293 (2007)
149 Cal.App.4th 943
The PEOPLE, Plaintiff and Respondent,
v.
Tommy GASTELLO, Defendant and Appellant.
No. F050325.
Court of Appeal of California, Fifth District.
April 13, 2007.
*294 Janice Wellborn, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brian Alvarez and Kathleen A. McKenna, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
WISEMAN, J.
Defendant Tommy Gastello was convicted of bringing drugs into a jail. His case presents one question: Is an accused guilty of bringing drugs into jail if he or she entered the jail only due to being arrested and brought there in custody? The answer has to be no. Before defendant went out and encountered the police, he intentionally put the drugs in his pocket and was guilty of simple possession, but, as we explain in the published part of this opinion, he did not engage in the voluntary act (actus reus) necessary for the crime of bringing them into the jail. He was driven to the jail in custody, in a police car, in handcuffs. In the unpublished part of the opinion, we address the question of whether he had the criminal intent (mens rea) necessary for the crime.
The conviction of bringing drugs into a jail is reversed. The case is remanded to the trial court for resentencing on the remaining charges, which include simple possession of methamphetamine.

*295 FACTUAL AND PROCEDURAL HISTORIES

Officer Jennifer Machado of the Hanford Police Department was on patrol in her car at about 11:00 o'clock on Thanksgiving night, 2005, when she saw defendant and his adult son, Johnny, riding bicycles. The Gastellos were riding from defendant's house to his brother-in-law's house. Machado stopped them because defendant's bicycle had no light. Johnny's bicycle had one.
Two more officers arrived to assist with this traffic stop. One officer separated Johnny from defendant and began questioning Johnny. Officer Machado had begun questioning defendant, asking for his name and date of birth so that she could carry out a warrant check, when she noticed that he was "fidgety, agitated." He was angry about the stopMachado admitted that, "to be honest, ... a cite for that Vehicle Code violation is not very common"and the officer thought "he was trying to hide something." She suspected he was intoxicated and confirmed her suspicion by comparing his pupils with dots printed on a card prepared for that purpose and by observing how his pupils responded when she shined her flashlight in his eyes. She further suspected that defendant had drugs in his possession when he spontaneously volunteered that the pants he was wearing did not belong to him.
Machado arrested defendant on suspicion of being under the influence of a controlled substance. She did not read him his Miranda rights. When she asked if he had used drugs recently, he said he had smoked marijuana laced with "ice" the day before. "Ice" is a form of methamphetamine. She searched him but found no drugs.
Defendant's wife (the two were married a few months after the arrest) was inside took place. She could see the police car's flashing lights from inside the house and went out to see what was happening. She watched Officer Machado perform sobriety examinations, a pat-down, and finally a search of defendant's clothing. Among other things, Machado searched defendant's sweatshirt and took several items out of the pockets. Then one of the other officers came over and searched defendant's pockets again. Machado did not recall a search by a second officer.
Defendant was handcuffed and placed in Machado's car and she drove him to the Kings County Jail. On the way, Machado told defendant that it was a felony to bring drugs or weapons into the jail. She asked if he understood and he said yes.
Inside, defendant was booked. He was instructed to take everything out of his pockets and remove all of his clothing except for a t-shirt, pants, and underpants. As he obeyed, he recommended that Machado not look at the items he was removing too closely, as he had fleas. Machado searched them anyway and found in defendant's sweatshirt a small plastic bag containing a crystalline substance. Defendant accused Machado of planting it. Chemical testing showed that the substance was a usable quantity of methamphetamine.
A blood test was taken. Defendant's blood was found to contain potentially toxic levels of methamphetamine and morphine. Morphine is a metabolite of heroin. A technician testified that the levels were "quite high, very consistent with someone who is, what we would call, `speed balling[,]' ... [i.e.,] [m]ixing ... a central nervous system stimulant with a central nervous system depressant."
The district attorney filed an information charging defendant with (1) possession of methamphetamine (Health & Saf. *296 Code, § 11377, subd. (a)); (2) bringing a controlled substance into a jail (Pen.Code, § 4573); and (3) being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)). The information also alleged under counts one and two that defendant had a 1994 conviction for first degree burglary. (Pen.Code, § 459.) It alleged that this prior offense was a serious felony (Pen.Code, §§ 667, subds.(b)-(i), 1170.12, subd. (a)) and that defendant served a prison term for it and committed another felony within five years (Pen.Code, § 667.5, subd. (b)).
Defendant admitted the prior conviction and prison-term allegations. After a one-day trial, the jury found him guilty of all counts.
The court imposed an aggregate prison sentence of seven years. This consisted of a six-year doubled middle term for count two and a one-year enhancement for count two. The court also imposed a concurrent four-year doubled middle term for count one and a concurrent one-year term for count three.

DISCUSSION
The offense of bringing drugs into a jail is defined in Penal Code section 4573:
"Except when otherwise authorized ... any person who, knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison ... or into any county ... jail ... any controlled substance ... is guilty of a felony...."
Defendant argues that there was insufficient evidence to prove the crime. "When an appellant asserts there is insufficient evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidencethat is, evidence that is reasonable, credible, and of solid valuefrom which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (In re Jerry M. (1997) 59 Cal. App.4th 289, 298, 69 Cal.Rptr.2d 148.) The case presents the questions of whether there was insufficient evidence to prove either the required actus reus or the required mens rea here.

I. Actus reus
An accused must do a guilty act (actus reus), or omit to do a required act, to be guilty of a crime. A statutory expression in California of this fundamental concept is in Penal Code section 20, which provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (See also Pen.Code, § 15 [definition of crime includes act, law forbidding or commanding it, and prescribed punishment]; People v. Crutcher (1968) 262 Cal.App.2d 750, 754, 68 Cal.Rptr. 904 [some act, committed or omitted in violation of law forbidding or commanding it, is necessary for there to be crime].) We are dealing here with a crime requiring an affirmative act (bringing drugs into a jail), not a crime of omission (e.g., failing to file a tax return). As a result, the first question we must answer is whether defendant did an affirmative act.
We conclude he did not. From the time of his detention during the traffic stop to the time when the drugs were discovered, defendant did nothing that can be regarded as the affirmative act of bringing something into a jail. He was detained, questioned, arrested, handcuffed, transported to the jail grounds and led into the jail building. He omitted to confess to having the drugs, but that is not an affirmative act. Defendant did nothing but submit to the lawful authority of the police. In sum, *297 defendant did not bring drugs into the jail. The facts can best be described by the statement that defendant was brought to the jail while not confessing that he had drugs on his person. This statement describes passivity and omission, not the doing of an act. He possessed the drugs, of course, and that is an affirmative act for purposes of the crime of simple possession. Defendant does not challenge his conviction of simple possession. The conviction he does contest requires a different act, "bringing" or "sending." (Pen.Code, § 4573.)
This case is even stronger for the defendant than Martin v. State (1944) 31 Ala. App. 334, 17 So.2d 427. Martin is a criminal-law classic on the subject of actus reus and is a favorite of casebooks and law review articles. (See, e.g., Kadish & Schulhofer, Criminal Law and Its Processes: Cases and Materials (6th ed.1995) p. 171; Nourse, Reconceptualizing Criminal Law Defenses (2003) 151 U.Pa. L.Rev. 1691, 1728; Kelman, Interpretive Construction in the Substantive Criminal Law (1981) 33 Stan. L.Rev. 591, 603.) Martin was arrested in his house. Police officers then took him out onto the street. There, he "manifested a drunken condition by using loud and profane language...." (Martin v. State, supra, 17 So.2d at p. 427.) He was convicted of public drunkenness. The Alabama Court of Appeals reversed. "Under the plain terms of this statute, a voluntary appearance [in a public place] is presupposed. The rule has been declared, and we think it sound, that an accusation of drunkenness in a designated public place cannot be established by proof that the accused, while in an intoxicated condition, was involuntarily and forcibly carried to that place by the arresting officer." (Ibid.) Some other often-cited cases reach a similar result. (People v. Newton (1973) 72 Misc.2d 646, 340 N.Y.S.2d 77, 79-80 [no actus reus to support conviction under New York law of possessing unlicensed firearm where defendant was on flightscheduled to fly from Bahamas to Luxembourg with no stops in United Statesthat made unscheduled landing in New York]; People v. Shaughnessy (1971) 66 Misc.2d 19, 319 N.Y.S.2d 626, 628 [no actus reus to support conviction of trespassing where defendant was passenger in car that entered property and therefore lacked control over entry].)
Martin at least did the affirmative act of yelling profanities after bring arrested and brought into the street. Here defendant did nothing at all after police officers took custody of him; he omitted to confess to having drugs and submitted to being taken to prison. For these reasons, the evidence did not support the essential element of actus reus. The prosecution did not present sufficient evidence to prove the crime.

II. Mens rea[**]

DISPOSITION
The conviction on count two is reversed and the sentence vacated. The case is remanded to the trial court for resentencing on the remaining counts.
WE CONCUR: VARTABEDIAN, Acting P.J., and HILL, J.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.
[**] See footnote *, ante.