[No. S151961. June 24, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY RICHARD LOW, Defendant and Appellant.

## COUNSEL

Matthew A. Siroka, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin, Laurence K. Sullivan, René A. Chacón and Arthur P. Beever, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—Defendant Tony Richard Low, a convicted felon with a long criminal record, was arrested while driving a stolen vehicle. He received and waived his *Miranda* rights,[1] denied any wrongdoing, and underwent a patdown search before being taken into custody. No contraband or weapons were found.

Outside the entrance to the jail, the arresting officer told defendant that it was illegal to bring a controlled substance into the facility. Defendant denied having any drugs in his possession. He was brought inside and searched as part of the booking process. Despite his contrary assurance, defendant was found in the possession of a small packet of methamphetamine. It was tucked into his sock.

A jury convicted defendant of unlawfully driving or taking a vehicle—the crime that triggered his arrest—and of violating Penal Code section 4573.[2] As pertinent here, the latter statute makes it a felony for "any person" to "knowingly bring[] . . . into . . . any state prison . . . or into any county . . . jail . . . any controlled substance" without legal authority or official permission to do so.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*).

[2] All further statutory references are to the Penal Code except as otherwise stated.

Defendant argues here, as he did in both the trial and appellate courts, that section 4573 does not apply to someone who is arrested and brought to jail, and who is found to possess a controlled substance during the booking process. First, defendant contends no statutory violation occurred because his presence inside the jail was involuntary and unrelated to any intent to smuggle drugs. The Legislature, he posits, has no discernable interest in penalizing someone who happens to have a controlled substance when detained for another crime. Second, defendant claims the statutory scheme placed him in an inherently coercive bind—either admit possessing a controlled substance outside of jail (see Health & Saf. Code, § 11377, subd. (a)) (Health and Safety Code section 11377(a)), or bring the drugs inside and risk slightly stiffer sanctions under section 4573. Prosecution for the latter act, he asserts, violated his privilege against compelled self-incrimination under the Fifth Amendment to the United States Constitution.

We agree with the lower courts that, under the circumstances of this case, defendant is not statutorily or constitutionally immune from prosecution under section 4573. He voluntarily secreted a controlled substance on his person in violation of the law, was then arrested for unrelated criminal conduct, and thereafter committed a third crime—knowingly entering jail in the possession of drugs. While such entry was compulsory, the act of bringing drugs inside was not. The arresting officer gave advance warning about the prohibitions in section 4573, and defendant violated its terms despite ample opportunity to avoid doing so.

In reaching this conclusion, we rely on the plain meaning of the statute, and on the manner in which similar statutes regulating other in-custody crimes have been construed. Indeed, by essentially limiting section 4573 and related provisions to noninmate smugglers, defendant's approach would risk the introduction of drugs and other contraband into penal settings, and undermine the legislative aim to maintain order and safety therein.

Nor does enforcement of section 4573 under the present circumstances violate the Fifth Amendment ban on the criminal use of compelled incriminating testimony. Section 4573 does not coerce anyone to admit guilt of any crime or punish them for failing to do so. It simply prevents all persons, including those arrested while unlawfully possessing drugs and committing other crimes, from engaging in a nontestimonial criminal act—walking into a custodial setting with knowledge they are bringing controlled substances with them. To the extent defendant's false denial of guilt at the jail entrance

incriminated him at trial, he is procedurally barred from raising the issue. In any event, any federal constitutional error in admission of the statement was not prejudicial.

We therefore decline to reverse the judgment of conviction.

## I. FACTS

### A. *The Evidence*

On the afternoon of June 29, 2005, Detective Ronald Jones of the Sacramento County Sheriff's Department was driving his official vehicle on Interstate 80 when defendant rapidly approached him from behind in a truck. As he passed the officer's car, defendant waved an object—a water bottle bearing a law enforcement emblem. Jones learned by his onboard computer and police radio that the truck had been reported stolen. He requested backup, and followed as defendant left the freeway and stopped at a dead-end street. The truck had traveled at speeds of 80 to 100 miles per hour while weaving through traffic.

After activating his red emergency lights, Detective Jones drew his handgun and approached the truck. He identified himself as a police officer, and told defendant to stop the engine, toss the keys outside, and put his hands in the air. Over the next few minutes, defendant raised and lowered his hands several times, and did not otherwise do what Jones asked.

Meanwhile, Officer Christopher Wahl of the California Highway Patrol arrived and ordered defendant out of the truck. After another brief delay, defendant complied.

Officer Wahl placed defendant under arrest for the unlawful driving or taking of a motor vehicle. The officer patted the outside of defendant's clothing, searching for weapons, and found nothing. Defendant was advised of his constitutional rights under *Miranda*. After waiving those rights, he explained that the owner of the truck was a friend who had loaned it to him for work. Wahl then drove defendant by patrol car to the Solano County jail.

Outside the jail, near the entrance, Officer Wahl and defendant had another brief exchange. Wahl testified at trial that he told defendant "it was illegal to bring any controlled substances inside the jail facility." Wahl asked if defendant had any such item in his underwear or socks, or elsewhere on his person, and said he would be searched inside the building. According to Wahl, defendant stated he had "nothing inside his socks or undergarments."

Deputy Brian Glenn was on duty when Officer Wahl escorted defendant into the jail to be booked into custody. This process entailed a brief medical screening, fingerprinting, and an inventory search, in which defendant was told to remove his socks and shoes. When defendant fumbled with the left sock, Glenn peered inside the ankle-band area, and saw a small plastic baggie containing a clear, crystal-like substance. Glenn gave the baggie to Officer Wahl, who logged it into evidence. The packet and its contents were admitted at trial.

A criminalist tested the crystal substance that defendant brought into jail and found that it contained methamphetamine. The drug weighed 20 milligrams and was present in a usable amount.

Christopher Terrell owned the truck that defendant—his friend, houseguest, and employee—drove when arrested. Terrell's truck, which he cherished and rarely used for work, was a limited-edition 2003 Ford F-150 with Harley-Davidson markings. Terrell described the circumstances under which defendant took the truck on June 21 without his knowledge or consent, and refused numerous requests by phone to return it. Terrell contacted the police.

Defendant did not testify at trial. He called one witness, his girlfriend, in defense of the Vehicle Code charge. An admitted methamphetamine user, she claimed that Terrell gave defendant the keys to the Ford, along with a bag of methamphetamine, and discussed materials needed for work. In rebuttal testimony, Terrell disputed this account.

### B. The Proceedings

The jury convicted defendant, as charged, of two felony counts: (1) unlawfully driving or taking a vehicle in violation of Vehicle Code section 10851, subdivision (a), and (2) bringing a controlled substance into jail in violation of section 4573. In a bifurcated proceeding, the trial court found true three enhancements for prior prison terms alleged under section 667.5, subdivision (b). Two of them involved robbery convictions sustained in 1982 and 1988, and one concerned a 1993 burglary conviction. Defendant received a prison sentence of seven years eight months.[3]

---

[3] The sentence consisted of a principal term of four years under section 4573, a subordinate term of eight months under Vehicle Code section 10851, and one additional year for each of the three prior prison terms under section 667.5. The four-year principal term represented the high term under section 4573, which authorizes two, three, or four years in prison. In aggravating the sentence, the trial court noted that defendant had 10 prior felony convictions, that five of them would qualify as "strikes" for purposes of imposing a life term, and that the prosecutor showed restraint in alleging them only as prior prison terms. The Court of Appeal rejected challenges to the sentence. None are raised or addressed in this court.

Near the close of trial, defendant argued, for the first time, that section 4573 did not apply to him. The first such exchange happened during discussions on jury instructions. Absent a standard instruction under section 4573, the court indicated that it would give modified versions of existing instructions on similar offenses. (See §§ 4573.6 [knowingly possessing controlled substance in prison or jail], 4574, subd. (a) (section 4574(a)) [knowingly bringing firearm, deadly weapon, or explosive into prison or jail]; CALJIC Nos. 7.34.01, 7.34.03.)[4] Neither party objected to this approach. However, defendant asked the court to also instruct on the "simple" possession of methamphetamine under Health and Safety Code section 11377(a), which he described as a lesser included offense of section 4573. Defendant opined that the jury could find him not guilty of the section 4573 charge, and guilty only of the uncharged possession offense, because he did not "intentionally" bring drugs into jail, and entered "involuntarily," under arrest for another crime. The trial court rejected this view of the law and facts, and declined to instruct on the "lesser" charge.[5]

Defendant expanded his challenge to section 4573 in a motion for new trial filed after the jury convicted him of that offense. As before, he claimed section

---

[4] Thus, the trial court instructed, in pertinent part, as follows: "Every person who knowingly brings into any county jail or within the grounds belonging to the institution any controlled substance, such as methamphetamine[,] is guilty of a violation of . . . section 4573, a crime. . . . [¶] . . . [E]ach of the following elements must be proved: [¶] 1. A person exercised control over . . . methamphetamine, a controlled substance; [¶] 2. That person knew of its presence; [¶] 3. That person knew of its nature as a controlled substance; [¶] 4. The substance was in an amount sufficient to be used as a controlled substance; [¶] 5. At the time of possession, the person entered the county jail or within the grounds belonging to the institution." The requisite knowledge was defined as involving "the existence of the facts in question. Knowledge of the unlawfulness of any act or omission is not required. A requirement of knowledge does not mean that the act must be done with any specific intent." Along these lines, the court also instructed that section 4573 required a "union or joint operation of act or conduct and general criminal intent." The latter concept was said to occur when the person "intentionally does that which the law declares to be a crime, . . . even though he may not know that his act or conduct is unlawful."

[5] Health and Safety Code section 11377(a) prohibits the unauthorized possession of a controlled substance. (See *People v. Martin* (2001) 25 Cal.4th 1180, 1184–1185 [108 Cal.Rptr.2d 599, 25 P.3d 1081] [requiring dominion and control over controlled substance in usable amount, plus knowledge of drug's presence and narcotic nature].) The crime is punishable by one year in county jail or by confinement in state prison, with the latter term ranging from 16 months to two or three years. (See § 18.) When declining defendant's request for an instruction on Health and Safety Code section 11377(a), the trial court noted that if defendant possessed drugs, he brought them into jail, and that nothing showed he possessed them only outside the jail. The Court of Appeal rejected defendant's claim of error for failure to instruct under Health and Safety Code section 11377(a). (See *People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] [instruction on lesser included offense required only when evidence raises doubt about all elements of charged offense].) Defendant does not challenge the resolution of his instructional claims below. They are not raised or considered here.

4573 exempts persons who possess controlled substances when arrested and jailed for other crimes, and that the statute targets noninmate smugglers. Defendant insisted section 4573 serves no purpose where, as here, a booking search could detect any hidden drugs, and other statutes regulating unauthorized drug possession seem to apply. The new trial motion also contained a claim that defendant had not presented earlier concerning violation of his privilege against compelled self-incrimination under the Fifth Amendment. Under this view, section 4573 compels arrestees to admit before entering jail that they unlawfully possess drugs under Health and Safety Code section 11377(a), and punishes them more harshly if they do not incriminate themselves and bring the drugs inside.

The new trial motion was denied. The trial court disagreed with defendant's reading of the statute. The court noted that section 4573 is not limited on its face to persons other than those who were brought to jail and booked into custody, and that the Legislature could have included such language if it chose to do so. In addition, the trial court rejected defendant's constitutional claim. The court reasoned as follows: Defendant was being punished for knowingly bringing drugs into the jail, not for exercising his constitutional rights. Section 4573 has nothing to do with coerced incriminating admissions. Even if both the arresting officer and defendant had remained silent outside the jail, defendant would have brought the drugs into the facility and violated section 4573.

In an unpublished opinion, the First District Court of Appeal, Division Five, rejected arguments similar to those raised in the new trial motion, and affirmed defendant's conviction under section 4573. The appellate court found no basis for conditioning a statutory violation on whether the person entered jail "voluntarily," or whether drugs were "intentionally" smuggled inside. Absent any contrary authority, the Court of Appeal further concluded that the statutory scheme did not force an arrestee who possessed drugs when brought into jail to make any choice that was testimonial and incriminating in the Fifth Amendment sense.

Defendant sought review. As pertinent here, the petition renewed both his statutory and constitutional challenges to section 4573. In the process, he relied heavily on *People v. Gastello* (2007) 149 Cal.App.4th 943 [57 Cal.Rptr.3d 293], review granted June 13, 2007, S153170, a decision that had been filed a few days earlier by the Fifth District Court of Appeal. The Court of Appeal's decision in *Gastello* conflicts in key respects with the analysis adopted by the lower courts here.

We granted review to address whether (1) section 4573 is violated where the defendant possesses methamphetamine when brought into jail following

his arrest on other charges, and (2) there is a constitutional bar to application of section 4573 under such circumstances. At the same time, we ordered review on our own motion in *Gastello*. We decide both matters by separate opinion today.

## II. MEANING OF STATUTE

### A. *Statutory Elements*

■ The relevant statutory language makes it a felony for "any person" to "knowingly bring[] . . . into any county . . . jail . . . any controlled substance" that he is not authorized to possess. (§ 4573.)[6] Defendant argues that this provision does not apply to someone, like him, who happens to possess a controlled substance when arrested for another crime, and who *was brought* into jail involuntarily in order to be booked pursuant to that arrest. He insists the proscribed affirmative act of "bring[ing]" a controlled substance into jail cannot be committed under such circumstances. In a related vein, defendant contends that a person who enters jail under the compulsion of an arrest does not *"knowingly* bring[]" drugs inside, and therefore does not have the requisite intent, simply because a controlled substance is found on his person during the booking search. (§ 4573, italics added.) According to defendant, the act is not "knowingly" performed unless the person deliberately went to jail with the intent to smuggle drugs for use, sale, or some other illicit purpose. However, based on the plain language of section 4573, and a commonsense meaning of its terms, we disagree.

■ **1. "Any Person."** In making the foregoing arguments, defendant largely overlooks a significant feature of the statute. In particular, section 4573

---

[6] Section 4573 reads in full now, as at the time of defendant's crime, as follows: "Except when otherwise authorized by law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the person in charge of the institution to give the authorization, any person, who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the state are located under the custody of prison officials, officers or employees, or into any county, city and county, or city jail, road camp, farm or other place where prisoners or inmates are located under custody of any sheriff, chief of police, peace officer, probation officer or employees, or within the grounds belonging to the institution, any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming a controlled substance, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years. [¶] The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities under the jurisdiction of, or operated by, the state or any city, county, or city and county." Methamphetamine is a controlled substance for purposes of section 4573. (See Health & Saf. Code, § 11055, subd. (d)(2).)

applies on its face to "any person" who commits the proscribed act under the specified circumstances. Such language is quite plain and broad. It suggests that anyone and everyone who knowingly brings a controlled substance into jail under the specified circumstances violates the statute. No qualifications or conditions purport to limit liability to noninmates of the jail. Nor does any language exclude persons under arrest or otherwise held in official custody.

A similar conclusion has been reached under at least one closely related statute. Section 4573 appears in part 3, title 5 of the Penal Code, concerning "Offenses Relating to Prisons and Prisoners." (See § 4500 et seq.) Much like section 4573, several adjacent provisions place restrictions on possessing and importing drugs and other contraband in custody. (See §§ 4573.5 [knowingly bringing alcoholic beverages, drugs other than controlled substances, or drug paraphernalia into prison or jail], 4573.6 [knowingly possessing controlled substances in prison or jail], 4574(a) [knowingly bringing firearms, deadly weapons, or explosives into prison or jail].)[7] The manner in which these statutes have been construed is relevant here. (See *People v. Harris* (2006) 145 Cal.App.4th 1456, 1461 [52 Cal.Rptr.3d 577] (*Harris*) [stating that §§ 4573 and 4573.5 should be " 'construed together' "]; *People v. Gutierrez* (1997) 52 Cal.App.4th 380, 386 [60 Cal.Rptr.2d 561] (*Gutierrez*) [same, as to §§ 4573, 4573.5, 4573.6 and 4574]; *People v. Buese* (1963) 220 Cal.App.2d 802, 807 [34 Cal.Rptr. 102] (*Buese*) [same, as to §§ 4573, 4573.5, 4573.6].)

Courts have long assumed that section 4573.6, which bans "[a]ny person" from knowingly possessing a controlled substance in prison or jail, applies to

---

[7] Section 4573.5 states in part: "Any person who knowingly brings into any state prison . . . or into any county . . . jail . . . or any other institution or place where prisoners or inmates are being held . . . any alcoholic beverage, any drugs, other than controlled substances, . . . or any device . . . or paraphernalia intended to be used for unlawfully injecting or consuming any drug other than controlled substances, without having authority so to do . . . is guilty of a felony. [¶] The[se] prohibitions and sanctions . . . shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities . . . ."

Section 4573.6 states in part: "Any person who knowingly has in his or her possession in any state prison . . . or in any county . . . jail . . . or any place or institution . . . where prisoners or inmates are being held . . . any controlled substances, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code [or] any device . . . or paraphernalia intended to be used for unlawfully injecting or consuming controlled substances, without being authorized to [do] so . . . is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years. [¶] The[se] prohibitions and sanctions . . . shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities . . . ."

Section 4574(a) states in part: "Except when otherwise authorized [to do so,] . . . any person . . . who knowingly brings or sends into . . . any state prison . . . or any other place where prisoners . . . are located . . . or any jail or any county road camp . . . any firearms, deadly weapons, or explosives, and any person who, while lawfully confined in a jail or county road camp possesses therein any firearm, deadly weapon, explosive, tear gas or tear gas weapon, is guilty of a felony[,] punishable . . . in the state prison for two, three, or four years."

"visitors and correctional officers *as well as to inmates.*" (*People v. Wilson* (1978) 83 Cal.App.3d 982, 990 [148 Cal.Rptr. 47], italics added; see *People v. Clark* (1966) 241 Cal.App.2d 775, 778 [51 Cal.Rptr. 7] [citing "any person" language in § 4573.6 to conclude that "[n]o individuals," including jail inmates, "are excepted from its provisions" or " 'extracted' from its operation"]; *People v. Trout* (1955) 137 Cal.App.2d 794, 796 [291 P.2d 83] [using same reasoning to reject claim that only noninmates can be convicted of possessing heroin in jail under § 4573.6].) It is reasonable to reach a similar conclusion under section 4573.

**2. "Brings."** As noted, defendant argues that an arrestee does not "bring[]" a controlled substance into jail under section 4573 simply because the drug is in his possession when he is brought into the facility in custody for another crime. However, this narrow interpretation of the term defies common usage.

As defendant suggests, the verb "to bring" certainly means "to take or carry along" an object as the actor moves in a self-directed fashion from one place to another. (Webster's 3d New Internat. Dict. (2002) p. 278; see 2 Oxford English Dict. (2d ed. 1989) p. 554 ["carrying or bearing in one's hand"].) But it also contemplates scenarios in which a person or object is "cause[d] to come along" because someone or something is "leading, conducting, [or] propelling" such movement. (2 Oxford English Dict., *supra*, at p. 554; accord, Webster's 3d New Internat. Dict., *supra*, at p. 278; see *People v. Waid* (1954) 127 Cal.App.2d 614, 617–618 [274 P.2d 217] (*Waid*) [using latter definition to conclude that accused "brings" drugs into prison under § 4573.5 by mailing them there].) Either way, when defendant walked into the jail carrying methamphetamine in the band of his sock, he was "bring[ing]" the substance into the facility under section 4573, even though such movement was caused by his earlier arrest and directed by the arresting officer.

■ California courts have long assumed that arrestees and other persons in custody can violate section 4573, and "bring[]" a controlled substance into jail, when the entry is officially compelled and drugs are secreted on their person. (See, e.g., *People v. Fenton* (1993) 20 Cal.App.4th 965, 967–969 & fn. 2 [25 Cal.Rptr.2d 52] [implying § 4573 would have applied to inmate returning to jail after work furlough if he had not had a doctor's prescription for the controlled substance found tucked between his toes, and affirming his conviction under § 4573.5 for bringing other drugs into jail that were not controlled substances]; *People v. Houston* (1958) 164 Cal.App.2d 396, 398 [330 P.2d 456] [affirming conviction for heroin possession under predecessor to Health & Saf. Code, § 11350, and noting that defendant would have violated § 4573 if he had not disclosed heroin secreted in his rectum before entering jail]; *People v. Woods* (1956) 139 Cal.App.2d 515, 521, 524–525

[293 P.2d 901] [affirming conviction under predecessor to Health & Saf. Code, § 11350 where opiates were found in defendant's rectum after his arrest, and suggesting he also violated § 4573 by bringing them into jail].)

To the extent we now conclude that the act prohibited by section 4573 can occur when someone is brought into jail in custody for another crime, this interpretation is consistent with cases deciding what it means to "bring[]" contraband into a penal setting in violation of similar statutory prohibitions. (E.g., *People v. Ross* (2008) 162 Cal.App.4th 1184, 1187–1189 [76 Cal.Rptr.3d 477] (*Ross*) [holding that defendant who carried knife in her undergarments, and who denied having it when arrested and booked for assault, violated § 4574(a) despite her claim that she did not voluntarily enter jail or commit affirmative act of bringing weapon inside]; *People v. James* (1969) 1 Cal.App.3d 645, 650 [81 Cal.Rptr. 845] (*James*) [similar conclusion under same statute as to defendant who kept pistol hidden in his waistband during booking search, and who later gave it to another jail inmate].) The critical factors are the lack of any compulsion to bring contraband inside, and the rejection of a clear opportunity to avoid doing so by voluntarily relinquishing the forbidden object or substance before entering the premises. (*Ross, supra*, 162 Cal.App.4th at p. 1191 [defendant "had no choice whether to go to jail, but she was afforded the choice not to violate section 4574"]; *James, supra*, 1 Cal.App.3d at p. 650 [defendant "knowingly possessed a firearm while in jail, after he had ample time to surrender it," such that his "choice about going to jail is irrelevant"].) We agree that such volitional conduct falls within the parameters of section 4573.

For the most part, defendant ignores the foregoing principles and authorities. He focuses instead on out-of-state case law, mainly, and in particular, a 1944 Alabama decision, *Martin v. State* (1944) 31 Ala.App. 334 [17 So.2d 427] (*Martin*). This reliance is misplaced.

According to the opinion in *Martin*, which is quite terse, police officers arrived at the defendant's home, found that he was intoxicated, and placed him under arrest. The arresting officers then took the defendant from his home and brought him onto a public highway. There, while still intoxicated, the defendant spoke loudly and used profanity. He was ultimately charged and convicted under a state law prohibiting anyone from " 'appear[ing]' " in a public place and " 'manifest[ing]' " a drunken condition through either boisterous or indecent conduct or loud and profane language. (*Martin, supra*, 17 So.2d at p. 427.)

The Alabama Court of Appeals reversed. Relying on a commonsense meaning of the statute, the court determined that "a voluntary appearance [while drunk in a public place] is presupposed." Guilt could not be established, the court said, where the intoxicated person "was involuntarily and

forcibly carried to that place by the arresting officer." (*Martin, supra,* 17 So.2d at p. 427.) In other words, it appears every part of the alleged criminal transaction was deemed involuntary on appeal. By taking the defendant from the private confines of his own home, knowing he was intoxicated and already under arrest, and placing him in a public place where the terms of the statute under which he was later charged could be violated, police officers effectively compelled, and arguably manufactured, commission of the crime.

Such is not the case here. After being stopped by Detective Jones, defendant was arrested by Officer Wahl for driving a stolen vehicle. No evidence shows that either officer knew or suspected that defendant had any illegal drugs in his possession. In fact, the patdown search that Wahl conducted incident to the arrest at the scene revealed no contraband. Wahl then took defendant to the local county jail, as any arresting officer presumably would be obligated to do. Before entering the facility, the officer gave defendant ample opportunity to avoid violating section 4573. In particular, Wahl advised defendant that it was illegal to bring drugs into the jail, asked whether he had any drugs in his clothes or on his person, and warned that he would be searched inside. Despite this warning, methamphetamine was found in defendant's sock during the booking process.

■ Thus, unlike in *Martin, supra,* 17 So.2d 427, nothing supports defendant's suggestion that he was forced to bring drugs into jail, that commission of the act was engineered by the police, or that he had no choice but to violate section 4573. Defendant entered jail in the possession of methamphetamine that he had previously secreted on his person. Hence, he committed the act that section 4573 proscribes.

**3. "Knowingly."** Defendant contends that a person cannot "*knowingly* bring[]" a controlled substance into a custodial setting under section 4573 unless he intends to smuggle drugs into jail for some illicit purpose, such as use or sale. (*Ibid.,* italics added.) This element is missing, he argues, absent any evidence he intended to get arrested and go to jail with such a drug-smuggling goal in mind.

■ Section 4573 contemplates a culpable mental state, but not the one defendant describes. As defined in the Penal Code, the term "knowingly" involves "*only* a knowledge that the facts exist which bring the act or omission within the [relevant code] provisions." (§ 7, par. 5, italics added.) It "does not require any knowledge of the unlawfulness of such act or omission." (*Ibid.*) This definition—which is consistent with the notion of general criminal intent—requires the accused to knowingly perform the proscribed act, but does not involve any intent to commit a further act or achieve a particular effect. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 8, pp. 209–210.)

■ As we have seen, the act that must be "knowingly" performed to violate the "bring[ing]" provisions of section 4573 involves entering a prison or jail in the possession of a controlled substance. In general, the knowing possession of a controlled substance simply requires an awareness of both its physical presence and narcotic character. (See *People v. Martin, supra*, 25 Cal.4th 1180, 1184 [describing basic elements of unauthorized possession of controlled substance under Health & Saf. Code, § 11377(a)]; *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 [40 Cal.Rptr.2d 722, 893 P.2d 717] [same]; *People v. Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146] [finding insufficient evidence of requisite knowledge to support conviction for unauthorized possession of controlled substance under predecessor to Health & Saf. Code, § 11377(a)]; *People v. Winston* (1956) 46 Cal.2d 151, 158–161 [293 P.2d 40] (*Winston*) [requiring knowledge of drug's narcotic character as one element of unlawful possession of controlled substance under predecessor to Health & Saf. Code, § 11350]; see also 2 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against Public Peace and Welfare, §§ 90–92, pp. 602–606.)[8]

Similar principles have been used to describe the mental state required for certain in-custody offenses that are closely related to section 4573. (See *People v. Carrasco* (1981) 118 Cal.App.3d 936, 947 [173 Cal.Rptr. 688] (*Carrasco*) [holding trial court erred in not instructing under § 4573.6 that unauthorized possession of controlled substance in prison or jail requires "dual knowledge" of drug's presence and nature]; *People v. Rodriquez* (1975) 50 Cal.App.3d 389, 396 [123 Cal.Rptr. 185] [rejecting claim under § 4574(a) that unauthorized possession of deadly weapon in jail or county road camp requires "specific intent" to use item for violence].) Not surprisingly, the trial court did not depart from this approach when instructing defendant's jury on knowledge and intent under section 4573.

Nothing in section 4573 or other relevant authority supports defendant's view that the crime requires an intent or scheme to smuggle drugs into jail *over and above* the knowledge component we have described. Presumably,

---

[8] In describing the knowledge component, *Winston, supra*, 46 Cal.2d 151, stated that "specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic . . . ." (*Id.* at p. 158.) The court explained that by requiring knowledge of the narcotic character of the substance possessed, the crime merely involved " 'knowledge that the facts exist which bring the act . . . within the provisions of [the] code.' " (*Ibid.*) The word "knowingly" was added in 1959 along with other language, including the references to "send[ing]," and to "assist[ing]" in bringing or sending, controlled substances into prison or jail. (Stats. 1959, ch. 662, § 1, p. 2637.) The 1959 amendment occurred shortly after *Winston* was decided. It was evidently intended, in part, to clarify the mental state required to commit the various proscribed acts in a manner consistent with that decision. (See generally *People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [Legislature is deemed aware of relevant law, and presumably adopted existing judicial construction of terms it used in framing amendment to statute].)

the Legislature would have signaled whether a special intent to fulfill such an unlawful purpose or to cause some adverse effect bore on commission of the offense. No such language appears in section 4573. (Cf. §§ 4535 [carrying or sending into prison or jail anything useful to aid escape "with intent" to facilitate the crime], 4570.5 [presenting false identification or fraudulent documentation "for the purpose of" securing admission to prison or jail].) We decline to rewrite the statute. (See generally *People v. Ansell* (2001) 25 Cal.4th 868, 881 [108 Cal.Rptr.2d 145, 24 P.3d 1174].)

Here, defendant was stopped and arrested near the highway while driving a stolen vehicle. At some point before he was brought to jail, he came into the possession of methamphetamine packed in a small plastic baggie. Defendant carried the packet inside the band of his sock, outside the plain view and easy reach of others. He then ignored an express warning by the arresting officer that controlled substances could not lawfully be brought into jail. This evidence suggests that defendant, a career criminal, knew before he entered the facility about the packet concealed on his person and about the character of the substance inside. (See *Carrasco, supra*, 118 Cal.App.3d 936, 947 [any person "found in possession of secreted drugs or narcotics within a penal facility will be hard put to disprove either type of knowledge" required for unlawful drug possession under § 4573.6 or analogous Health & Saf. Code provisions].)

Substantial evidence thus supports the conclusion that defendant acted with the mental state contemplated by section 4573. No additional intent or purpose of the kind urged here was required.

B. *Historical Support*

Though the considerations discussed above amply persuade us that section 4573 was properly applied to defendant, we find additional support for our view in the historical record. As we have seen, section 4573 was enacted in 1941 when the Legislature overhauled part 3 of the Penal Code, and added title 5, regulating various crimes in custody.[9] However, prior to that time, similar prohibitions appeared elsewhere in the code, in statutes that are predecessors of section 4573. The first such provision, and the oldest one, is former section 180. (Added by Stats. 1899, ch. 4, § 1, p. 4 [making it a felony for "[a]ny person," not authorized by law, to "bring[]" narcotics, liquor, or weapons into state "prisons" or "reformatories"], renumbered as former § 180a by Stats. 1901,

---

[9] This scheme defines and punishes the following categories of in-custody crimes: assaults and batteries (§§ 4500–4501.5), possessing and manufacturing weapons and holding hostages (§§ 4502–4503), escapes and rescues (§§ 4530–4550), possessing and importing illegal drugs and other contraband (§§ 4570–4570.1, 4573–4575), entries into unauthorized areas (§§ 4570.5–4571), and damaging prison or jail property (§ 4600).

ch. 92, § 1, p. 107, and repealed by Stats. 1905, ch. 490, § 5, p. 652.) Former section 180 was eventually renumbered and replaced by former section 171a. The main substantive change made at that time was the addition of new language prohibiting contraband from being brought into a "jail" setting. (*Ibid.*, added by Stats. 1905, ch. 490, § 2, p. 651, amended by Stats. 1911, ch. 186, § 1, p. 364, and repealed by Stats. 1972, ch. 497, § 1, p. 868.)

Critical here are materials in the legislative record accompanying the adoption of former section 171a, the immediate predecessor to section 4573. These materials indicate that the Legislature targeted inmates who, upon returning to penal institutions after performing labor outside, hid small amounts of opium and other narcotics in their clothing. Because such contraband often went undetected, and because it threatened institutional control, any person who committed the act was made subject to felony sanctions. (See State Bd. of Prison Directors, Biennial Rep. (1902–1904) Capt. of the Guard's Rep., p. 80, printed at 3 Appen. to Js. of Sen. & Assem. (1905 Reg. Sess.); *id.*, Warden of Folsom State Prison, Biennial Rep., p. 93, printed at 3 Appen. to Js. of Sen. & Assem. (1905 Reg. Sess.).) Similar concerns apply to one who, like defendant, brings secreted drugs into the facility following his arrest for another crime.

## C. *Legislative Policies*

Application of section 4573 to defendant is supported not only by its language and history, but also is consistent with the legislative policies it was apparently intended to serve. We reject the suggestion defendant has made throughout these proceedings that section 4573 serves no meaningful purpose if it is construed to apply to arrestees who are not present in jail by choice and who did not enter the facility in order to smuggle drugs inside.

Section 4573 and similar laws flow from the assumption that drugs, weapons, and other contraband promote disruptive and violent acts in custody, including gang involvement in the drug trade. Hence, these provisions are viewed as " 'prophylactic' " measures that attack the " 'very presence' " of such items in the penal system. (*Harris, supra,* 145 Cal.App.4th 1456, 1461, quoting *Gutierrez, supra,* 52 Cal.App.4th 380, 386; accord, *Ross, supra,* 162 Cal.App.4th 1184, 1189; *People v. Lee* (2006) 136 Cal.App.4th 522, 536 [38 Cal.Rptr.3d 927]; *Estes v. Rowland* (1993) 14 Cal.App.4th 508, 518, 522–523 [17 Cal.Rptr.2d 901]; *Waid, supra,* 127 Cal.App.2d 614, 617.)

The Legislature could reasonably conclude that section 4573 aids this effort by encouraging all persons, including arrestees, to divest themselves of controlled substances in their possession in lieu of violating the statute. Consistent with this goal, section 4573 requires that its "prohibitions and

sanctions" be "prominently posted" for the benefit of everyone entering prison or jail property. (See *Gutierrez, supra,* 52 Cal.App.4th 380, 389 ["posting requirement" provides "additional deterrent" to statutory violation, and is not an element of the crime or a defense to its commission].) As to persons entering jail in custody, the Legislature could reasonably choose not to rely solely on the booking process to uncover controlled substances arrestees have not disclosed, or on the possession statutes to penalize those who succeed in bringing them inside. (See *James, supra,* 1 Cal.App.3d 645, 647–648 [firearm was not discovered on defendant's person during booking search and was later handled by other inmates].) Section 4573 deters arrestees from knowingly and voluntarily bringing controlled substances into jail "with impunity." (*Ross, supra,* 162 Cal.App.4th 1184, 1189.)

A contrary conclusion could undermine operation of the statutory scheme as a whole. As discussed above, section 4573 and statutes with a similar structure and purpose have long been construed in light of each other. (E.g., *Harris, supra,* 145 Cal.App.4th 1456, 1461; *Gutierrez, supra,* 52 Cal.App.4th 380, 386; *Buese, supra,* 220 Cal.App.2d 802, 807.) Hence, if we confined section 4573 to noninmates and intentional smugglers as defendant suggests, courts might strain to reach a different interpretation under statutes closely related to section 4573, or adopt an equally narrow view of their reach. We decline to promote such analytical confusion or thwart the interest in correctional security in this way.

### III. CONSTITUTIONALITY OF STATUTE

Defendant asserts here, as below, that application of section 4573 to him constituted a violation of his privilege against compelled self-incrimination under the Fifth Amendment, as follows: Having been arrested and brought to jail with methamphetamine in his sock, defendant could not avoid prosecution under section 4573 unless he admitted, before entering the facility, that he possessed a controlled substance in violation of Health and Safety Code section 11377(a). By refusing to confess his guilt, he had no choice but to enter jail with the drugs, violate section 4573, and incur a longer prison term. Defendant claims his conviction should be reversed in light of the compulsion and penalties he endured. We disagree.

■ The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." The high court has made clear that the meaning of this language cannot be divorced from the historical practices at which it was aimed, namely, the brutal inquisitorial methods of " 'putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses, without evidence from another source.' " (*United States v.*

*Hubbell* (2000) 530 U.S. 27, 34, fn. 8 [147 L.Ed.2d 24, 120 S.Ct. 2037], quoting *Doe v. United States* (1988) 487 U.S. 201, 212 [101 L.Ed.2d 184, 108 S.Ct. 2341] (*Doe*); see *Andresen v. Maryland* (1976) 427 U.S. 463, 470–471 [49 L.Ed.2d 627, 96 S.Ct. 2737].) At its core, the privilege protects against the "cruel trilemma of self-accusation, perjury or contempt." (*Murphy v. Waterfront Comm'n* (1964) 378 U.S. 52, 55 [12 L.Ed.2d 678, 84 S.Ct. 1594].) Accordingly, the amendment prohibits the direct or derivative *criminal use* against an individual of "testimonial" communications of an incriminatory nature, obtained from the person under official compulsion. (*Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.* (2004) 542 U.S. 177, 189–190 [159 L.Ed.2d 292, 124 S.Ct. 2451]; *Chavez v. Martinez* (2003) 538 U.S. 760, 766–767 [155 L.Ed.2d 984, 123 S.Ct. 1994] (*Chavez*); *Hubbell, supra,* 530 U.S. at pp. 34–38; *Pennsylvania v. Muniz* (1990) 496 U.S. 582, 593–596 [110 L.Ed.2d 528, 110 S.Ct. 2638] (*Muniz*).)

The *testimonial* limitation on the protection afforded by the privilege against self-incrimination is critical to the issue presented here. The purpose of the privilege is to "spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to [a criminal] offense or from having to share his thoughts and beliefs with the Government." (*Doe, supra,* 487 U.S. 201, 213.) Hence, testimonial evidence requires a "communication" that itself "relate[s] a factual assertion" by the accused, or "disclose[s] information" in the form of his personal knowledge or subjective beliefs. (*Id.* at p. 210.)

Applying this standard, the high court has found, for instance, that not all responses to official questioning are testimonial. (E.g., *Muniz, supra,* 496 U.S. 582; see *id.* at pp. 592 [finding no testimonial communication in drunk driving suspect's slurred speech and poor muscle control while answering questions during police interrogation], 599 [concluding that same suspect's answer that he did not know the date of his sixth birthday was testimonial because it conveyed truthful admission that he was mentally confused]; cf. *Schmerber v. California* (1966) 384 U.S. 757, 763–765 [16 L.Ed.2d 908, 86 S.Ct. 1826] [" 'real or physical evidence' " in the form of blood samples extracted from suspect's body over his objection and subjected to chemical testing disclosed nothing about his thought processes and involved no compelled testimonial communication].)

■ Based on the foregoing principles, we disagree with defendant that, when he was arrested and brought into jail with methamphetamine, his commission of the "greater" crime of bringing drugs into jail under section 4573 was the compelled *testimonial* product of his decision not to admit that he was committing the "lesser" crime of possessing drugs outside of jail. Nothing in section 4573 requires a person in defendant's situation to " 'speak

his guilt' " of any crime. (*Doe, supra*, 487 U.S. 201, 211.) Rather, liability under the statute is premised on the *nontestimonial* act of "knowingly bring[ing]" prohibited drugs into a correctional facility.

A hypothetical scenario inspired by the facts of this case illustrates the flaw in defendant's contrary view, as follows: The defendant is arrested on the street for a crime, and patted down for weapons. A small packet containing a controlled substance that he had previously placed on his person is not found by the officer at that time. The defendant is taken into custody and brought to jail. However, in this hypothetical version of events, the defendant stays completely silent and does nothing about the drugs he knows he still possesses. He is then escorted into jail to be booked for the crime that triggered his arrest. A short time later, the drugs are found in his possession during a routine search. The defendant sustains a conviction under section 4573, because all of the elements of a statutory violation were found.

■ The foregoing scenario shows that the statutory scheme does not implicate Fifth Amendment protections against compelling an arrestee to be a "witness" against himself. Our hypothetical defendant did not make any statements or answer any questions that would have deterred him from violating section 4573 by disclosing his unlawful possession of drugs before entering jail. His prosecution and conviction for knowingly bringing drugs into jail had nothing to do with the state extracting a confession or an incriminating admission that could be used to convict him of another drug offense.

It follows that defendant in the present case, like his counterpart in the hypothetical case, was prosecuted and convicted under section 4573, not because he gave or refused "testimony" under official compulsion, but because he engaged in the nontestimonial criminal act of knowingly entering the jail in the possession of a controlled substance. As we have seen, this conduct is reasonably viewed by the Legislature as a threat to institutional safety and control. Individuals like defendant who violate section 4573 have placed themselves in this unfortunate position by secreting illegal drugs on their persons before being arrested and jailed for committing other crimes. A detainee can properly be expected to avoid knowingly bringing drugs into jail, and can be punished commensurate with his culpability if he does so anyway. The Fifth Amendment privilege against self-incrimination does not remove every difficult choice "of the guilty suspect's own making." (*Brogan v. United States* (1998) 522 U.S. 398, 404 [139 L.Ed.2d 830, 118 S.Ct. 805].)

Finally, we are mindful that defendant *did make a statement* at the entrance to the jail in the present case. Prosecution evidence showed that, after giving an advisement under section 4573, the arresting officer asked defendant whether he had a controlled substance, and he basically said "no." This answer proved to be false in light of the methamphetamine jailers found in his sock a short time later. Arguably, this custodial exchange, which required defendant to communicate knowledge about illegal substances in his possession, presented him with the " 'trilemma' of truth, falsity, or silence" that the Fifth Amendment privilege was designed to prevent. (*Muniz, supra,* 496 U.S. 582, 597.) As indicated above, where such a violation occurs, the remedy is to ensure that the statements, and any evidence derived from them, "cannot be used" against the defendant criminally. (*Chavez, supra,* 538 U.S. 760, 768 (plur. opn. of Thomas, J.); see *United States v. Patane* (2004) 542 U.S. 630, 639 [159 L.Ed.2d 667, 124 S.Ct. 2620] (plur. opn. of Thomas, J.) ["blanket suppression rule" protects "actually compelled testimony" and its "fruits"].)

However, we need not decide whether defendant's false denial of guilt was the compelled incriminating product of an unconstitutional choice, or whether this evidence should have been excluded from the prosecution's case-in-chief. Two reasons appear.

 First, defendant never moved to exclude this evidence below, and has therefore forfeited any right to challenge its admission here. No motion was made before or during trial to suppress the statement under the Fifth Amendment or on any other ground. Thus, the relevant issues were not litigated below, and the trial court lost the opportunity to rule, during the trial proceedings themselves, whether defendant's statement should be suppressed under the Fifth Amendment. As in prior similar cases, we will not decide that issue for the first time in this court. (*People v. Ray* (1996) 13 Cal.4th 313, 339 [52 Cal.Rptr.2d 296, 914 P.2d 846], and cases cited; accord, *People v. Smith* (2007) 40 Cal.4th 483, 506–507 [54 Cal.Rptr.3d 245, 150 P.3d 1224]; *People v. Combs* (2004) 34 Cal.4th 821, 845–846 [22 Cal.Rptr.3d 61, 101 P.3d 1007]; *People v. Maury* (2003) 30 Cal.4th 342, 387–388 [133 Cal.Rptr.2d 561, 68 P.3d 1].)

Second, defendant was not prejudiced by any error in failing to suppress this evidence in violation of his Fifth Amendment right not to incriminate himself. Under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], a reviewing court need not reverse the judgment on this ground if it determines "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Id.* at p. 24.) In other words, the alleged error must be "unimportant in relation to everything else the jury

considered on the issue in question, as revealed in the record." (*Yates v. Evatt* (1991) 500 U.S. 391, 403 [114 L.Ed.2d 432, 111 S.Ct. 1884].) That is the case here.

The record shows that defendant possessed methamphetamine in jail. The substance was found during a search of his clothes, leading the booking officer to give it to the arresting officer. Both witnesses described the substance for the jury. In addition, a criminalist confirmed that it was methamphetamine and was present in a useable amount. This testimony, coupled with the physical evidence itself, provides overwhelming proof that defendant knowingly brought a controlled substance into jail in violation of section 4573.

Under the circumstances, defendant's brief statement beforehand that he did not possess a controlled substance, though demonstrably false and arguably indicative of a consciousness of guilt, assumed only slight importance in the context of all the other evidence at trial. Defendant's statement did not contribute to the verdict under section 4573.[10] We therefore find no constitutional basis for reversing the conviction.[11]

---

[10] Of course, any motion to suppress the methamphetamine found in jail as the tainted physical fruit of a Fifth Amendment violation would have lacked merit and been subject to denial at trial. The discovery of the drugs in defendant's possession did not flow from, or have any connection to, his statement outside the jail that he had "nothing inside" his clothes. Unlike the statement, defendant's act of retaining the drugs as he entered jail was not testimonial. His exculpatory statement also did not lead police to search for drugs in his sock once he brought them inside. The search would have occurred in due course, and the drugs would have been found regardless of any contrary assurance defendant made. (See *Nix v. Williams* (1984) 467 U.S. 431, 444 [81 L.Ed.2d 377, 104 S.Ct. 2501] [federal constitutional violation does not bar admission of physical evidence that would inevitably have been discovered by lawful means]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 62 [17 Cal.Rptr.3d 710, 96 P.3d 30] [same].)

[11] In his opening brief on the merits, defendant argues that application of section 4573 impairs his due process rights under the federal and state Constitutions because of the state's "outrageous" conduct in causing him to violate section 4573, and because he committed no voluntary or intentional criminal act. The state's misconduct allegedly occurred when the arresting officer brought defendant into jail with methamphetamine hidden on his person, and when the prosecutor charged him under section 4573. In making this claim, defendant cites federal and state decisions debating whether, and to what extent, "outrageous government conduct" serves as a constitutional bar to prosecution or a defense to conviction. (E.g., *United States v. Russell* (1973) 411 U.S. 423, 431–432 [36 L.Ed.2d 366, 93 S.Ct. 1637]; *People v. Smith* (2003) 31 Cal.4th 1207, 1223–1227 [7 Cal.Rptr.3d 559, 80 P.3d 662] (maj. opn. of Brown, J.); *id.* at pp. 1227–1229 (conc. opn. of Werdegar. J.).) We decline to reverse the conviction on this ground. First, to the extent this argument concerns principles and authorities different from those already discussed herein, it was not presented either at trial or on appeal, and is raised for the first time on review. Defendant has thus forfeited this constitutional theory by failing to timely raise or properly present it in this case. Second, for reasons we have already explained, defendant's conduct in knowingly bringing methamphetamine into jail violated section 4573. Hence, his due process challenge to the actions of the state rests on a faulty premise, i.e., that

## IV. CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

he committed no criminal act for which he could be properly prosecuted and convicted. No viable basis for relief on this ground therefore appears.