Filed 10/28/21  P. v. Pearl CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY CHRISTOPHER PEARL,<br><br>    Defendant and Appellant. | H045559<br>(Santa Clara County<br>Super. Ct. Nos. C1757813, C1756269) |

## I.    INTRODUCTION

In case No. C1757813, defendant Anthony Christopher Pearl was convicted by jury of possession of methamphetamine for sale (Health and Saf. Code, § 11378;[1] count 1), misdemeanor possession of hydrocodone (§ 11350, subd. (a); lesser included offense to count 2), misdemeanor possession of controlled substance paraphernalia (§ 11364; count 3), and possession of methamphetamine in jail or on jail grounds (Pen. Code, § 4573.6; count 4).  Defendant admitted that he had served six prior prison terms (Pen. Code, § 667.5, subd. (b)) and had a prior conviction of possession of methamphetamine for sale (§ 11370.2, subd. (c)).  In case No. 1756269, defendant pleaded no contest to buying or receiving a stolen motor vehicle with a qualifying prior

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

conviction (Pen. Code, §§ 496d, 666.5; count 2) and admitted that he had served six prior prison terms. The trial court sentenced defendant to an agreed-upon aggregate term of five years in county jail.

Defendant contends that insufficient evidence supports his conviction of possession of methamphetamine in jail or on jail grounds; the trial court erred when it instructed the jury on the offense of possession of methamphetamine in jail or on jail grounds; the court improperly excluded defendant's statements to the police; the court improperly admitted evidence of defendant's 2003 conviction of possession of methamphetamine for sale; and the court failed to determine defendant's ability to pay before it imposed various fines and fees.

For reasons that we will explain, we conclude that the trial court committed prejudicial error when it excluded defendant's statements that were proffered as circumstantial evidence of defendant's mental state as to count 4, possession of methamphetamine in jail or on jail grounds. Accordingly, we reverse the conviction on count 4.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Factual Background*[2]

#### 1.  Current Incident

On February 26, 2017 at approximately 10:00 p.m., San Jose Police Officer Tien Nguyen performed a vehicle stop on a white Lexus. As Officer Nguyen was talking to the driver, he observed defendant in the front passenger seat continuously tapping his upper groin area close to his waistband. Officer Nguyen suspected that defendant may have been carrying a weapon. Officer Nguyen requested the assistance of other officers and, once they arrived, ordered the driver out of the vehicle.

---

[2] Because the facts pertaining to case No. C1756269 are irrelevant to the claims raised on appeal, we summarize solely the facts presented at the trial in case No. C1757813.

When the driver opened the door, Officer Nguyen saw a small bindle of what appeared to be methamphetamine in the crevice between the driver's seat and door. Defendant was holding a cell phone, a plastic bag, and a pair of sweatpants. An officer asked defendant to place the items on the dashboard and defendant complied.[3]

Officers found a small plastic baggie containing suspected methamphetamine inside a black pouch in the vehicle's center console and an unlabeled prescription drug bottle containing approximately 30 pills on the passenger-side floorboard. Officers located a methamphetamine pipe and approximately $115 on defendant. A backpack contained a working scale with white crystalline residue on it, "the beginning of a ledger," and two cell phones. Defendant said that the backpack was his.

Officer Jamie Hall transported defendant to the county jail. In the secured underground jail parking lot, Officer Hall searched defendant again. Officer Hall found a small bindle of suspected methamphetamine in a pocket on defendant's sleeve. When Officer Hall removed defendant's belt, he saw "a little piece of a baggie hanging out of [defendant's] waistband area." Officer Hall removed the baggie from defendant's waistband and saw that it was "a larger bag" of suspected methamphetamine. Officer Hall noticed that defendant displayed signs of being under the influence of methamphetamine.

Testing revealed that the larger plastic bag found in defendant's waistband contained 9.69 grams of methamphetamine. The plastic bags found in the black pouch in the center console and in defendant's jacket each contained less than one gram of methamphetamine. A composite sample of the methamphetamine tested 99% pure. The pills tested positive for hydrocodone.

---

[3] It is unclear from the record whether the plastic bag in defendant's hands contained anything and whether it was seized by the police.

When asked a hypothetical question that tracked the facts of this case, a drug sales expert opined that the methamphetamine and hydrocodone were possessed for sale based on the presence of the scale, crumpled-up cash, and multiple cell phones and given the amount of methamphetamine possessed and the lack of a prescription label on the bottle containing hydrocodone. The fact that the possessor of these items was unemployed also suggested to the expert that the narcotics were possessed for sale based on the narcotics' cost and the methamphetamine's purity. The presence of a methamphetamine pipes did not change the expert's opinion that the narcotics were possessed for sale because a lot of sellers also use methamphetamine.

### 2. Uncharged Acts Evidence

On February 13, 2003, the police had information that defendant had been seen selling methamphetamine. Police contacted defendant and searched him, finding a small amount of methamphetamine in his pants pocket. Defendant also had a cell phone, a pager, and a couple hundred dollars in cash. A search of defendant's residence revealed glass methamphetamine pipes, a digital scale, numerous coin-size plastic baggies, and a cup containing approximately half an ounce of methamphetamine.

Certified conviction records stating that on March 28, 2003, defendant was convicted of possessing methamphetamine for sale in violation of section 11378 were admitted into evidence.

### 3. Defense Case

Defendant rested without presenting evidence.

### B. *Procedural History*

In case No. C1757813, defendant was charged by amended information with possession of methamphetamine for sale (§ 11378; count 1), possession for sale or purchase for sale of hydrocodone (§ 11351; count 2), misdemeanor possession of controlled substance paraphernalia (§ 11364; count 3), and possession of methamphetamine in jail (Pen. Code, § 4573.6; count 4). It was also alleged that

defendant had served six prior prison terms (Pen. Code, § 667.5, subd. (b)) and had a prior conviction of possession of methamphetamine for sale (§ 11370.2, subd. (c)).

A jury found defendant guilty of counts 1, 3, and 4 and of the lesser included offense on count 2 of possession of hydrocodone (§ 11350, subd. (a)). Defendant admitted the prior prison term and prior conviction allegations as part of a plea agreement involving case No. C1756269.

In case No. C1756269, defendant was charged with vehicle theft with a qualifying prior conviction (Veh. Code, § 10851, subd. (a), Pen. Code, § 666.5; count 1) and buying or receiving a stolen motor vehicle with a qualifying prior conviction (Pen. Code, §§ 496d, 666.5; count 2). Six prior prison terms (Pen. Code, § 667.5, subd. (b)) were alleged. Defendant pleaded no contest to count 2 and admitted the prior prison term allegations.

The trial court sentenced defendant to an agreed-upon aggregate term of five years in county jail and imposed various fines and assessments. In case No. C1757813, the trial court imposed the upper term of four years on count 4 and a concurrent three-year upper term on count 1. In case No. 1756269, the court imposed a concurrent two-year lower term. The court imposed a consecutive one-year term for a prior prison term enhancement and struck the remaining prior prison term enhancements. The court dismissed the section 11370.2 enhancement.

### III.    DISCUSSION

#### A.    *Sufficient Evidence Supports Defendant's Conviction of Possession of Methamphetamine in Jail or on Jail Grounds*

Defendant contends that insufficient evidence supports his conviction of possession of methamphetamine in jail or on jail grounds in violation of Penal Code section 4573.6 (section 4573.6) because methamphetamine was seized from him when he was searched in the jail's parking lot before he was "taken into the jail facility itself." We conclude that sufficient evidence supports defendant's conviction.

5

Section 4573.6 prohibits the unauthorized possession of a controlled substance "in any . . . jail . . . or within the grounds belonging to any jail . . . ." (*Id*., subd. (a).) In determining a sufficiency of the evidence claim, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence— that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Here, Officer Hall testified that when he searched defendant in the secured parking lot of the jail, he found a small bindle of suspected methamphetamine in defendant's jacket and a larger baggie of suspected methamphetamine in defendant's waistband area. Subsequent testing confirmed that the suspected narcotics seized from defendant in the jail parking lot were methamphetamine.

Several officers described the jail parking lot, providing substantial evidence that the lot was "within the grounds belonging to any jail." (§ 4573.6, subd. (a).) Officer Hall testified that only law enforcement officers and individuals accompanied by a law enforcement officer are permitted into the parking lot. To get into the lot, a law enforcement officer has to drive up to "a big metal roll down gate with [a] camera" controlled by jail staff. After jail staff opens the gate and allows entry into the lot, the staff shuts the gate, "lock[ing] [you] into the facility." Officer Hall testified that the location where he searched defendant "is the jail" and is "part of the jail grounds."

Two other officers testified similarly. Officer Nguyen described the location where defendant was searched as "[t]he underground parking lot of lower booking," and

6

stated that the lot is accessed by driving down a ramp and stopping in front of a metal gate monitored by jail staff. Jail staff opens the gate once they confirm that a police vehicle is waiting to enter. Officer Nguyen testified that the lot is "in the Santa Clara County jail" and that the outside of the building says " 'main jail.' " Officer Mike Harrington testified that the parking lot where defendant was searched is part of the jail, is secured by gates, and is controlled by correctional staff.

Relying on Penal Code section 4000,[4] defendant argues that the jail parking lot does not "actually constitute[] a jail" because its purpose "is not to detain jail inmates."

However, section 4573.6 prohibits the unauthorized possession of a controlled substance in jail "*or within the grounds belonging to any jail*." (*Id*., subd. (a), italics added.) Officers testified that the parking lot where methamphetamine was seized from defendant was either in the jail or part of the jail. To the extent that defendant argues there is insufficient evidence that the building where the lot was located housed prisoners, that fact could be reasonably inferred from the officers' repeated use of the term "jail," which is commonly understood to mean "a place of confinement for persons held in lawful custody." (Merriam-Webster Dict. Online (2021) <https://www.merriam-webster.com/dictionary/jail> [as of Oct. 28, 2021], archived at <https://perma.cc/Z8E8-49JA>.)

Moreover, when explaining the footage from his body camera to the jury, Officer Nguyen testified that the footage showed that he was driving underneath the main jail into "[l]ower booking, . . . where we take arrestees to be processed." Officer Nguyen

---

[4] Penal Code section 4000 states that "common jails . . . are used" "[f]or the detention of persons committed in order to secure their attendance as witnesses in criminal cases"; "[f]or the detention of persons charged with crime and committed for trial"; "[f]or the confinement of persons committed for contempt, or upon civil process, or by other authority of law"; "[f]or the confinement of persons sentenced to imprisonment therein upon a conviction for crime"; and "[f]or the confinement of persons pursuant to subdivision (b) of [Penal Code] Section 3454 for a violation of the terms and conditions of their postrelease community supervision."

explained that upon entering the building from the parking lot, there are a series of rooms with various stations arrestees are taken through to complete "[t]he booking . . . process of putting them into Santa Clara County jail" "as a prisoner" or "book the person into custody." Officer Nguyen clarified that "jail would be where . . . the inmates are kept, and lower booking would be where they are booked in the lower level of jail." From this testimony, the jury could reasonably infer that the jail where the underground parking lot is located is "a place of confinement of persons held in lawful custody." (*People v. Carter* (1981) 117 Cal.App.3d 546, 550.)

Based on this evidence, we conclude there is substantial evidence that defendant possessed a controlled substance "within the grounds belonging to any jail." (§ 4573.6, subd. (a).)

**B.**      *Exclusion of Defendant's Statements to the Police*

Defendant contends that the trial court violated his right to present a complete defense and deprived him of a fair trial when it excluded his exculpatory statements to the police.[5] The Attorney General counters that the court properly excluded the statements as inadmissible hearsay. We conclude that the trial court properly excluded the three hearsay statements defendant sought to introduce as evidence of his then existing state of mind because the statements were untrustworthy. However, we determine that the court erred when it excluded two nonhearsay statements that defendant proffered as circumstantial evidence of his mental state and that the error requires the reversal of count 4.

---

[5] Defendant asserts in a heading that the exclusion of his statements to the police violated his "rights to confrontation, cross examination, due process and a fair trial under the Fifth and Fourteenth Amendments." (Capitalization and bold omitted.) Because defendant solely provides legal argument regarding his contentions that the trial court violated his right to present a defense and to a fair trial, we do not address the remaining points. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

8

### 1. Trial Court Proceedings

Defendant moved in limine to introduce several statements he made to the police that were captured on officers' body cameras.[6]  Defendant sought to introduce the following statements under Evidence Code section 1250, which permits evidence of an out-of-court statement of the declarant's then existing mental or physical state:  "I use the scale to make sure we got the right amount so I don't get ripped off"; "I don't sell meth no more.  I just do meth"; and, regarding the hydrocodone pills, "I don't think it's a hot med."  (Bold omitted.)  The prosecution opposed the motion, arguing that the statements were inadmissible under Evidence Code section 1250 because they were untrustworthy.

Defendant sought to introduce as nonhearsay the following statements:  "[The methamphetamine is] up there on the dashboard"; and, " 'Well, you guys found the 13 grams, right?' "  (Bold omitted.)  Defendant argued that the statements were not hearsay because they were offered to prove that he was unaware that he possessed methamphetamine in the jail parking lot, not for the statements' truth.  The prosecution again asserted that the statements were inadmissible because they were untrustworthy.  Regarding defendant's statement involving the 13 grams of methamphetamine, the prosecution also argued that the statement was inadmissible because the body camera footage contained double hearsay as the officers were recounting defendant's statement to each other; the body-camera footage did not capture defendant making the statement.[7]

Police body camera footage showed defendant toss a pill bottle into the passenger side of the car as he exited the vehicle.  An officer then led defendant to a patrol car and patsearched him.  Defendant was placed in handcuffs.  Defendant asked if he had a

---

[6] Because of the underdeveloped trial court record, we rely on the parties' characterizations below of defendant's statements.  The Attorney General does not contest defendant's characterizations.

[7] The officers who appear on the body camera footage testified at trial.  The Attorney General does not argue that the statements were inadmissible because they contained double hearsay.

warrant.  An officer told defendant that he did not have one "right now," but that he was "going to get one soon" and he "need[ed] to take care of it."  Defendant said that he was "supposed to go in and see [his] agent on the second."  After a discussion regarding the warrant, defendant said that he had some pills in the car that he was taking to his father. Defendant stated, "I don't know if it's hydrocortisone or not," and, "I don't think it's a hot med."  The officer asked defendant if he was on parole and defendant responded, "AB 109" and that it was "[s]earchable."

Police searched defendant.  A couple of minutes into the search, an officer asked defendant if he had anything in the car.  Defendant responded, "I think they've got it. There's some up there on the dashboard."  Defendant also stated, "Yes, I put the meth on the dashboard."  When asked if he had any "tucked up," defendant responded, "It's up there on the dashboard."  Defendant was placed into a patrol vehicle.

Subsequent body camera footage showed another officer reading defendant his *Miranda*[8] rights and questioning defendant after the officers had searched defendant's car.  Defendant stated that the gray bag was his.  The officer told defendant that there was a scale in the bag with residue on it and asked defendant, "[W]hat's up with that?" Defendant responded, "That's just weighin' to make sure that we got the right amount." The officer asked, "So you don't get ripped off?"  Defendant responded, "Uh-huh." Defendant added, "We don't sell meth.  I do meth."  The officer asked, "You don't sell no more?"  Defendant stated, "Nope.  I just do meth.  Ain't no money in it."  The officer asked defendant about the pills.  Defendant responded that they were his dad's and that he did not think they were "a hot med."  Defendant asked if he was under arrest and the officer said yes.

Additional body camera footage showed the officers talking to each other inside the jail parking lot.  One officer stated that he found a baggie in defendant's pocket.  The

---

[8] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

officers relayed that defendant asked, " '[Y]ou guys found the 13 grams, right,' " and that they recovered another bag in defendant's waistband. (Bold omitted.)

The trial court ruled that all the statements were inadmissible under Evidence Code section 1250 because they "were made under circumstances that indicate a lack of trustworthiness." The court observed that before defendant made the statements, defendant had been removed from the car by the police and had tossed a pill bottle onto the car's floorboard. Once handcuffed, defendant asked if he had a warrant and was advised that "it was in printed status." Defendant acknowledged that he was on "searchable probation" and stated that he was meeting with his agent "on the 2nd." The court found that under those circumstances, "[d]efendant had a motive not to be honest with police as he was hoping not to find [*sic*] the drugs secreted in his crotch area."

### 2.  Legal Principles and Standard of Review

"[A] hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true. Hearsay is generally inadmissible unless it falls under an exception. (Evid. Code, § 1200, subd. (b).)" (*People v. Sanchez* (2016) 63 Cal.4th 665, 674 (*Sanchez*).)  "[A] statement 'offered for some purpose other than to prove the fact stated therein is not hearsay.' [Citations.]" (*Ibid.*)

Evidence Code section 1250 provides an exception to the hearsay bar for statements of the declarant's then existing state of mind. Evidence Code section 1250, subdivision (a) states:  "Subject to [Evidence Code] Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when:  [¶]  (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or  [¶]  (2) The evidence is offered to prove or explain acts or conduct of the declarant."  Evidence Code

11

section 1252 renders a statement inadmissible under Evidence Code section 1250 "if the statement was made under circumstances such as to indicate its lack of trustworthiness."

We review a trial court's ruling on the admissibility of evidence, including a decision that turns on the hearsay nature of evidence, for an abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

### 3. Analysis

#### a. Defendant's Hearsay Statements Proffered Under Evidence Code Section 1250 Were Properly Excluded

As stated above, defendant proffered three hearsay statements under Evidence Code section 1250 as evidence of his then existing state of mind: "I use the scale to make sure we got the right amount so I don't get ripped off"; "I don't sell meth no more. I just do meth"; and, regarding the hydrocodone pills, "I don't think it's a hot med." (Bold omitted.) We conclude that the trial court did not abuse its discretion when it excluded these statements as untrustworthy.

Hearsay statements that are otherwise admissible under Evidence Code section 1250 as evidence of the declarant's then existing state of mind "may be rendered inadmissible by the trustworthiness requirement of Evidence Code section 1252." (*People v. Riccardi* (2012) 54 Cal.4th 758, 821 (*Riccardi*), overruled on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) "[T]o withstand scrutiny under Evidence Code section 1252, a declarant's statements 'must be made in a natural manner, and not under circumstances of suspicion, so that they carry the probability of trustworthiness. Such declarations are admissible only when they are " 'made at a time when there was no motive to deceive.' " ' " (*Riccardi*, *supra*, at p. 821.)

In *Riccardi*, the California Supreme Court upheld the admission of the victim's statements as evidence of her then existing state of mind. (*Riccardi*, *supra*, 54 Cal.4th at p. 822.) The court observed that the majority of the statements "were made to her friends and family under circumstances that showed she was seeking their help, and she was not

12

seeking to deceive anyone. None of her statements were made to law enforcement or other persons to whom there may have been an incentive to lie or exaggerate." (*Ibid.*)

Here, in contrast, defendant made the three hearsay statements to the police at the crime scene while he was being actively investigated. Defendant made all three statements after he had been handcuffed, and he made the statements about his use of the scale and not selling methamphetamine after he had been read his *Miranda* rights. Moreover, defendant was aware of the criminal liability for possession of methamphetamine for sale when he made the statements because he had been previously convicted of the offense. As defendant recognized during the in limine hearing on the statements' admissibility, the statements were "admittedly exculpatory [and] self-serving." Unlike the victim in *Riccardi*, defendant had "an incentive to lie" when he made the statements to the police. (*Riccardi*, *supra*, 54 Cal.4th at p. 822.) Thus, the trial court did not abuse its discretion when it excluded these statements under Evidence Code section 1252 because the statements were made under circumstances that indicated their lack of trustworthiness.

Defendant asserts that the trial court's decision was "unreasonable and arbitrary" because "far from exonerating [him], the statements . . . were directly against his penal interest, in that they both admitted his personal use and possession of both methamphetamine and hydrocodone." But defendant did not seek to introduce the statements as declarations against interest under Evidence Code section 1230, and, even if he had, he would not have met the requirements of that hearsay exception because he was not unavailable as a witness. (See Evid. Code, § 1230; *People v. Lightsey* (2012) 54 Cal.4th 668, 716 [observing when upholding a statement's exclusion as a declaration against interest that the defendant was available to testify to the subject matter contained in the statement as "[i]t has long been the law that a defendant cannot make himself or herself ' "unavailable" ' . . . by exercising a privilege not to testify at trial"].)

Because the statements of defendant's then existing state of mind were made "under circumstances of suspicion," the trial court properly excluded them. (*Riccardi*, *supra*, 54 Cal.4th at p. 821.)

### b. Statements Proffered as Nonhearsay Were Admissible Circumstantial Evidence of Defendant's Mental State

When the trial court excluded defendant's statements to the police, it implicitly rejected defendant's proffer that two of the statements—"[The methamphetamine is] up there on the dashboard," and, " 'Well, you guys found the 13 grams, right?' "—were admissible for the nonhearsay purpose of demonstrating that defendant was unaware that he possessed methamphetamine in the jail parking lot, not for the truth of the assertions. (Bold omitted.) Defendant contends that the court erred because the statements "provided evidence that [he] did not knowingly possess drugs while in the [jail] parking lot" and were not hearsay.[9] The Attorney General did not initially respond to defendant's contention, but after we requested supplemental briefing, argues that the statements were properly excluded because they "contain[ed] an implied assertion of fact . . . constituting hearsay" that defendant "intended to convey." We conclude that the court erred when it excluded the statements because they were relevant circumstantial evidence of defendant's mental state and were not offered for their truth.

"[A] hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true." (*Sanchez*, *supra*, 63 Cal.4th at p. 674.) As the Court of Appeal explained in *People v. Ortiz* (1995) 38 Cal.App.4th 377, 389 (*Ortiz*), "a statement which does not directly declare a mental state, but is merely circumstantial evidence of that state of mind, is not hearsay. It is not received for the truth of the matter stated, but rather whether the statement is true or not, the fact such statement was made is relevant to a determination

---

[9] Defendant contends solely that the statements were relevant to count 4, possession of methamphetamine in jail or on jail grounds.

14

of the declarant's state of mind. . . . [S]uch evidence must be relevant to be admissible—the declarant's state of mind must be in issue."

"The threshold determination is whether the proffered statement is hearsay, i.e., whether it is being offered to prove the truth of its contents. ([Evid. Code], § 1200.) The statement: 'I am afraid of John,' is hearsay if offered to prove that the declarant fears John. If the declarant's state of mind is relevant, the statement is admissible under [Evidence Code] section 1250. If a declarant says: 'John is dangerous,' the analysis becomes more difficult. If offered to prove John is dangerous, the statement is inadmissible hearsay. If, however, the statement is offered merely to prove the victim believed John to be dangerous, the statement is not offered for its truth (thus not hearsay) but merely as circumstantial evidence of the declarant's mental state." (*Ortiz*, *supra*, 38 Cal.App.4th at pp. 389-390.)

The California Supreme Court has also "pointed out the distinction between (1) using an out-of-court declarant's assertion of his state of mind (e.g., A testifies that he heard the declarant B say, 'I am afraid of C') to prove that mental state directly, and (2) using his assertion of *other facts* (e.g., A testifies that he heard B say, 'C threatened to kill me') to prove the same mental state indirectly. The first is hearsay because it is used *testimonially*, i.e., it is offered for the purpose of inducing the trier of fact to believe in the truth of the assertion itself, just as if the declarant had so testified on the witness stand. The second is not hearsay because it is used *circumstantially*, i.e., it is offered as evidence of conduct on the part of the declarant (B reported that C threatened to kill him) from which the trier of fact is asked to draw an inference as to the declarant's state of mind at the time (B fears C)." (*People v. Green* (1980) 27 Cal.3d 1, 23, fn. 9 (*Green*), superseded by statute on another ground; see also *People v. Hopson* (2017) 3 Cal.5th 424, 432 (*Hopson*) ["The first, and most basic, requirement for applying the not-for-the-truth limitation [of the hearsay rule] is that the out-of-court statement must be offered for some purpose independent of the truth of the matters it asserts"].)

Here, in response to police questioning on whether there was methamphetamine and whether he had any methamphetamine "tucked up," defendant stated while being searched that "[the methamphetamine is] up there on the dashboard." Defendant later asked once inside the jail parking lot, " 'Well, you guys found the 13 grams, right?' " (Bold omitted.)

As defendant argued below, defendant's statements that "[the methamphetamine is] up there on the dashboard," and, " 'Well, you guys found the 13 grams, right,' " were circumstantial evidence that defendant was unaware that he possessed methamphetamine when he was inside the jail parking lot. (Bold omitted.) The statements were not hearsay because they were not offered to prove that the methamphetamine was on the dashboard or that the police had recovered " 'the 13 grams.' " (See Evid. Code, § 1200; *Green*, *supra*, 27 Cal.3d at p. 23, fn. 9.) Indeed, as defendant observed below, the statements "were demonstrably not true," as defendant had a baggie of methamphetamine tucked inside his waistband when he made them. Rather than offering the statements to "induc[e] the [jury] to believe in the truth of the assertion[s] . . . , just as if [defendant] had so testified on the witness stand," defendant offered the statements to " ask[] [the jury] to draw an inference as to [his] state of mind at the time." (*Green*, *supra*, at p. 23, fn. 9.)

The statements were directly relevant to whether defendant knew that he possessed methamphetamine when he was inside the jail parking lot in violation of section 4573.6 because "the knowing possession of a controlled substance . . . requires an awareness of both its physical presence and narcotic character." (*People v. Low* (2010) 49 Cal.4th 372, 386 (*Low*); see also *People v. Carrasco* (1981) 118 Cal.App.3d 936, 945 [to establish a violation of section 4573.6 the prosecution must prove "(1) [k]nowledge of the fact of possession, and (2) knowledge of the character of the thing possessed"].) And the statements were "capable of serving [their] nonhearsay purpose regardless of whether the jury believe[d] the matters asserted to be true." (*Hopson*, *supra*, 3 Cal.5th at p. 432.)

16

In other words, regardless of the truth or untruth of defendant's statements, they bore on whether defendant knowingly possessed methamphetamine on jail grounds—i.e., whether he had "an awareness of . . . its physical presence." (*Low*, *supra*, at p. 386.)

The Attorney General relies on *People v. Garcia* (2008) 168 Cal.App.4th 261 (*Garcia*) to argue that defendant's statements were inadmissible hearsay because they contained the implied assertion of fact that defendant "had already been dispossessed of the drugs." We are not persuaded.

In *Garcia*, the trial court admitted two notes written by the defendant's cellmate. (*Garcia*, *supra*, 168 Cal.App.4th at p. 286.) The first note threatened prospective witnesses and their families. (*Ibid.*) The second note stated in part, " '[T]hey are tripping in court that I'm doing or did you a favor on that,' " and, " '[T]ell [the attorney] that someone else wrote [the first note], not us or me.' " (*Id.* at p.287.) The Court of Appeal held that the trial court erred in its admission of the second note because it contained "implied hearsay"—that the defendant had requested a favor from the cellmate and had requested, authorized, or participated in drafting the first note. (*Id.* at p. 289, italics omitted.) The court explained that " '[e]vidence of an express statement of a declarant is . . . hearsay evidence *if such evidence is offered to prove*—not the truth of the matter that is stated in such statement expressly—but *the truth of a matter that is stated in such statement by implication*.' " (*Ibid.*, italics added.)

Here, in contrast, defendant did not proffer the statements, "[The methamphetamine is] up there on the dashboard," and, " 'Well, you guys found the 13 grams, right,' " to prove the assertion that the Attorney General contends is implied—that defendant had been dispossessed of the drugs. (Bold omitted.) Rather, defendant moved to introduce the statements as circumstantial evidence of his lack of knowledge that he still possessed methamphetamine. Again, as defendant readily admitted below, the factual assertions in the statements "were demonstrably not true." The statements

17

were "offered for some purpose independent of the truth of the matters [they] assert[ed]." (*Hopson*, *supra*, 3 Cal.5th at p. 432.)

Because the statements were relevant to defendant's "awareness of [the methamphetamine's] physical presence" (*Low*, *supra*, 49 Cal.4th at p. 386) and were not offered for their truth, the trial court erred when it excluded them (see *Ortiz*, *supra*, 38 Cal.App.4th at pp. 389-391).

### 4. Prejudice

Defendant contends that the trial court's improper exclusion of his statements, "[the methamphetamine is] up there on the dashboard," and, " 'Well, you guys found the 13 grams, right,' " violated his federal constitutional rights to present a complete defense and to a fair trial, and that we must determine whether he was prejudiced by the error under the *Chapman* standard of review.[10] (Bold omitted.) Under *Chapman*, reversal is required unless the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

" '[T]he Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." ' " (*Nevada v. Jackson* (2013) 569 U.S. 505, 509.) However, "[t]he exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right." (*People v. Cunningham* (2001) 25 Cal.4th 926, 999 (*Cunningham*).) Only in limited circumstances has the United States Supreme Court found that excluding critical defense evidence violated the due process clause. (See, e.g., *Crane v. Kentucky* (1986) 476 U.S. 683, 687-690 [exclusion of evidence regarding the circumstances of defendant's confession denied defendant a fair opportunity to present a

---

[10] Although defendant did not argue in the trial court that the exclusion of the statements violated his constitutional rights, because the claim "merely asserts that the trial court's ruling, insofar as wrong on grounds actually presented to that court, had the additional legal consequence of violating the Constitution," the claim is not forfeited on appeal. (*People v. Thornton* (2007) 41 Cal.4th 391, 443.)

18

defense]; *Chambers v. Mississippi* (1973) 410 U.S. 284, 302-303 (*Chambers*) [criticizing exclusion of "critical" evidence of declarations against interest and finding constitutional violation in conjunction with other trial error].)

The case before us does not involve the exclusion of defense evidence "on a minor or subsidiary point." (*Cunningham*, *supra*, 25 Cal.4th at p. 999.) Rather, defendant's statements, proffered for the nonhearsay purpose of establishing his mental state, were directly relevant and material to an element of the charge of possession of methamphetamine in jail or on jail grounds. As the trial court recognized during a discussion on jury instructions, the prosecution had to "prove . . . *defendant knew of the presence of the substance* and knew the character of the substance possessed." (Italics added.) Defendant's statements, "[the methamphetamine is] up there on the dashboard," and, " 'Well, you guys found the 13 grams, right,' " were "critical" circumstantial evidence that defendant was unaware that he continued to possess methamphetamine once he was placed in the patrol car and driven to the jail parking lot. (*Chambers*, *supra*, 410 U.S. at p. 302.) The evidence was not cumulative, speculative, irrelevant, or hearsay. (Cf. *Cunningham*, *supra*, at pp. 994-999 [finding no violation of right to present defense because the proffered evidence was cumulative, speculative, irrelevant, and/or hearsay].) Thus, we conclude that the exclusion of the statements violated defendant's right to present a complete defense.

We also determine that the error was prejudicial under *Chapman*. Although the methamphetamine found on defendant in the jail parking lot was a relatively large quantity (9.69 grams) and was contained in what appeared to be a gallon-size plastic bag tucked into defendant's waistband, the statements, "[the methamphetamine is] up there on the dashboard," and, " 'Well, you guys found the 13 grams, right,' " were strong circumstantial evidence that defendant did not know he still had methamphetamine on him when he was placed in the patrol car and driven to the jail parking lot. (Bold omitted.) Especially when combined with the officer's testimony that defendant

19

displayed signs of being under the influence of methamphetamine, the statements had a tendency to prove defendant's lack of "awareness of [the drug's] physical presence." (*Low*, *supra*, 49 Cal.4th at p. 386.)  Thus, we cannot conclude "beyond a reasonable doubt that [the statements' exclusion] did not contribute to the verdict."  (*People v. Aledamat* (2019) 8 Cal.5th 1, 12.)

For these reasons, we conclude that the trial court's erroneous exclusion of defendant's statements, which were critical to his defense to the charge of possession of methamphetamine in jail, requires the reversal of count 4.[11]

### C.      *Uncharged Acts Evidence*

Defendant contends that the trial court abused its discretion and violated his right to due process when it admitted evidence of his prior conviction of possession of methamphetamine for sale as evidence of his intent in count 1.  The Attorney General argues that the evidence was properly admitted under Evidence Code section 1101, subdivision (b) (section 1101(b)) to prove defendant's knowledge and intent.  We conclude that the trial court did not abuse its discretion when it admitted the uncharged acts evidence.

### 1.  Trial Court Proceedings

The prosecution moved in limine to introduce evidence of defendant's 2003 conviction of possession of methamphetamine for sale.  The prosecution asserted that the evidence was admissible under section 1101(b) to prove defendant's knowledge and intent.  Defendant moved in limine to exclude the evidence, arguing that it was

---

[11] Because we conclude that the trial court committed prejudicial error that requires the reversal of count 4, we do not reach defendant's claims that the court erred when it instructed the jury on count 4 and that it erred when it failed to determine defendant's ability to pay various fines and fees.  In addition, although we requested supplemental briefing on whether the Penal Code section 667.5, subdivision (b) enhancement must be stricken, we do not reach the issue because the reversal of count 4 requires resentencing.

highly prejudicial character evidence that should be excluded under Evidence Code sections 1101, subdivision (a), and 352.

At the initial hearing on the motions in limine, the prosecution stated that the arresting officer in the 2003 case would testify that he found a bindle of methamphetamine when he searched defendant and found methamphetamine, a scale, and baggies when he searched defendant's residence. The prosecution also sought admission of certified conviction records establishing that defendant was convicted of violating section 11378.

The trial court found that the proffered evidence "has substantial probative value" that "is not outweighed by the prejudicial effect. While this conviction is older in time, the facts are relevant as to whether . . . defendant possessed the narcotics for sale as well as his knowledge as to the nature and the character of the narcotics. [¶] It will not take an undue consumption of time. It will not be confusing to the jury because the court will give a limiting instruction on how the jury may use this evidence."

The court elaborated on its ruling at a later hearing, finding that the 2003 offense was not remote because "defendant has had numerous convictions from 2003 to 2017"; the fact that defendant pleaded guilty to the prior offense "resolves a degree of certainty"; and that "the jury will not be distracted by speculating whether . . . defendant is or was guilty of the . . . uncharged offenses and or should be punished for them." The court concluded that the evidence was admissible to prove that defendant knew of the methamphetamine's presence, knew it was a controlled substance, and possessed it for sale.

The trial court instructed the jury with CALCRIM No. 375 regarding the uncharged acts evidence. As relevant here, the court instructed the jury that it could consider the evidence "for the limited purpose of deciding whether . . . [t]he defendant acted with the intent to sell with respect to Count 1. [¶] Do not consider this evidence for any other purpose except for the limited purpose of determining the defendant's intent

21

with respect to Count 1. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Count[] 1. The People must still prove each charge beyond a reasonable doubt."

## 2. Legal Principles and Standard of Review

" ' "Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition." ' " (*People v. Thomas* (2011) 52 Cal.4th 336, 354 (*Thomas*).) Specifically, " '[s]ubdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition.' [Citation.] 'Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity. [Citations.]' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).)

"To be admissible, there must be some degree of similarity between the charged crime and the other crime, but the degree of similarity depends on the purpose for which the evidence was presented." (*People v. Jones* (2011) 51 Cal.4th 346, 371 (*Jones*).) "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*), superseded by statute on other grounds as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505-506.) "In prosecutions for drug offenses, evidence of prior drug

22

use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs." (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)

" ' "There is an additional requirement for the admissibility of evidence of uncharged crimes:  The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.  [Citation.]" ' " (*Thomas*, *supra*, 52 Cal.4th at p. 354; see Evid. Code, § 352.)  " 'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]'  [Citation.]" (*Fuiava*, *supra*, 53 Cal.4th at p. 667.)

" ' "We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." [Citation.]'  [Citation.]" (*Fuiava*, *supra*, 53 Cal.4th at pp. 667-668, fn. omitted.)

### 3.  Analysis

Defendant contends that the trial court abused its discretion when it admitted the uncharged acts evidence because it lacked substantial probative value as the incident was dissimilar from the circumstances of the charged crimes, but its "prejudicial effect . . . was great."  Defendant asserts that in the prior case, he "was the subject of a drug task force surveillance operation that included reports of him making an actual sale and a subsequent search warrant for his home," whereas "[i]n the present case, [he] was stopped by happenstance.  There were no small baggies found for distribution.  [He] was never observed making an actual drug sale, he was not surveilled, and his home wasn't searched."  Defendant also argues that the probative value of the uncharged acts evidence was diminished by the fact that the incident occurred 14 years before the charged crimes.

When admitting uncharged acts evidence under section 1101(b), "[t]he least degree of similarity is required to prove intent or mental state." (*Thomas*, *supra*, 52 Cal.4th at p. 355.) Here, the circumstances of the uncharged acts and the charged offenses were "sufficiently similar to support the inference that . . . defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) In both cases, defendant possessed methamphetamine pipes, digital scales, cell phones, similar amounts of methamphetamine, and over $100 cash. Exact similarity between the charged and uncharged acts is not required to prove intent; it is only required that they be similar enough to permit an inference. (See *People v. Rowland* (1992) 4 Cal.4th 238, 261; *People v. Rocha* (2013) 221 Cal.App.4th 1385, 1394.)

Nor was the probative value of the uncharged acts evidence "substantially outweighed" by its prejudicial effect. (Evid. Code, § 352.) The uncharged incident was not particularly inflammatory compared to the charged incident; the jury presumably followed the trial court's instruction on the proper purpose for which the evidence could be considered; and defendant's conviction of the uncharged offense eliminated any temptation by the jury to convict defendant of the charged offenses in order to punish him for prior wrongdoing. (See *Jones*, *supra*, 51 Cal.4th at pp. 371-372.) Although the passage of 14 years between the uncharged acts and the current offenses is a significant period of time, it did not reduce the evidence's probative value to the extent that it should have been excluded given the incidents' similarity. (See *People v. Williams* (2018) 23 Cal.App.5th 396, 422 (*Williams*).)[12]

---

[12] We note that "[r]emoteness for purposes of sections 352 and 1101, subdivision (b) is measured differently than remoteness for purposes of impeachment. For the latter, the question often turns on whether the person has led a blameless life, demonstrating that the person no longer has the propensity to lie generally imputed to convicted felons. [Citation.] For the former, the question is whether the prior conduct is so old that it is not reasonable to conclude it speaks to a person's current mental state. [Citations.]" (*Williams*, *supra*, 23 Cal.App.5th at p. 422, fn 9.)

Lastly, defendant relies on the prosecution's argument to the jury to demonstrate that the uncharged acts evidence was inadmissible propensity evidence. However, in reviewing a trial court's evidentiary ruling, we consider the facts known to the court when it made its ruling and thus look to the prosecution's offer of proof in determining error. (See *People v. Hendrix* (2013) 214 Cal.App.4th 216, 243.)

In sum, the trial court did not abuse its discretion when it admitted uncharged acts evidence pertaining to defendant's 2003 possession of methamphetamine for sale.

## IV.    DISPOSITION

The judgment is reversed. The trial court shall vacate defendant's conviction of Penal Code section 4573.6 in count 4; the other convictions remain. The prosecution may elect to retry defendant on count 4. If the prosecution elects not to retry defendant on count 4, the trial court shall resentence defendant in case Nos. C1757813 and C1756269.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
ELIA, J.

***People v. Pearl***
**H045559**