Filed 11/8/23  P. v. Garcia CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C097208 |
| Plaintiff and Respondent, | (Super. Ct. No. 2020CR0019343) |
| v. | |
| STACEY LEE GARCIA, | |
| Defendant and Appellant. | |

A jury found defendant Stacy Lee Garcia guilty of four counts of sending a controlled substance into a state prison and one count of conspiracy to bring a controlled substance into a state prison.  The trial court imposed three years for the conspiracy conviction and stayed, pursuant to Penal Code[1] section 654, the sentence for the four sending a controlled substance convictions without first imposing any terms of years.  On

---

[1]     Further section references are to the Penal Code.

1

appeal, defendant argues there was insufficient evidence to prove she committed the offenses. We disagree and affirm defendant's convictions but remand the matter to the trial court to impose sentence for the sending a controlled substance convictions before staying their execution.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Ryan W. was an inmate of the California Correctional Center, a state prison in Lassen County. When Ryan arrived at the prison for intake he filled out a list of relatives and associates. Ryan listed defendant as his girlfriend and included a phone number and an address in Bodfish, California.

On July 1, 2018, Sergeant Lyla Whitford—an investigator for the California Department of Corrections and Rehabilitation assigned to the prison—inspected an envelope addressed to Ryan from Grace Axiom with a return address in Lake Isabella. Using a public records database Sergeant Whitford determined there was no Grace Axiom associated with the return address; she concluded Grace Axiom was a fictitious name.

The words "I love you and miss you" were written on the envelope in a felt tip pen. The envelope was stamped with a sideways smiley face. Sergeant Whitford noticed the seam of the envelope was raised, which in her experience was a common indicator that controlled substances were hidden in the envelope. She peeled the seam open and discovered strips that tested presumptive positive for a usable quantity of Suboxone,[2] a controlled substance that Sergeant Whitford knew was commonly used in prisons. In addition to the Suboxone strips, the envelope contained a greeting card that said: "Ryan, I love your life. Homeboy. Hope all is well. Let me know if you need anything. Take care. Love Me."

---

[2] Three tests were presumptive positive for buprenorphine, the active ingredient in Suboxone. For brevity and clarity, further references are to Suboxone.

Over one month later, on August 23, 2018, Sergeant Whitford inspected a second envelope addressed to Ryan from Grace Axiom with the same Lake Isabella return address. Concealed under the flap of the envelope were five lumps that tested presumptive positive for a usable quantity of black tar heroin. The envelope also contained greeting cards, envelopes, lined paper, and a handwritten note that said "I love you so much" in a blue felt tip pen.

About one year later, on June 6, 2019, Sergeant Whitford inspected a third envelope addressed to Ryan. The envelope was sent from Nichole Ryan with a return address in Bodfish, California. Sergeant Whitford believed Nichole Ryan was a fictitious name because it was not associated in the public records with the Bodfish return address. The words "I love you so much" were written on the back of the envelope in felt tip pen. Inside the envelope, were greeting cards, paper, and two envelopes with the same preprinted smiley face as the first envelope. These envelopes contained three strips that tested presumptive positive for a usable quantity of Suboxone.

Sergeant Whitford began monitoring Ryan's phone calls, the recordings of which were played for the jury. One of the calls Sergeant Whitford monitored took place on the evening of July 14, 2019. An inmate called the number on file for defendant, identified himself as Ryan, and spoke with a woman. The woman talked about how much she missed Ryan and stamps she had mailed to Ryan. They also discussed a compact disc player Ryan wanted the woman to order, and another inmate to whom Ryan wanted the woman to send mail before that inmate lost his mail privileges.

Eight days later Sergeant Whitford monitored another call. Again an inmate called the number on file for defendant, identified himself as Ryan, and spoke with a woman. They discussed a package the woman had sent to Ryan, but Ryan had not received it. The woman assured Ryan she sent letters to him and his friend. The delay concerned Ryan because his friend would lose his mail privileges soon due to his participation in a riot.

The day after the second call, Sergeant Whitford inspected a fourth envelope. This envelope was addressed to Brad H., an inmate once housed with Ryan. This envelope was from Grace Luciano using a return address in Bodfish, California. Again, Sergeant Whitford used a public records database to determine there was no Grace Luciano associated with the return address. In blue felt tip pen on the back of the envelope was the message "Love you" with an exclamation point dotted with a heart.

The envelope again contained greeting cards, envelopes, a handwritten note, and lined paper. The handwritten note, which was addressed to Brad, indicated that its author bought a house for him after his release. The letter asked Brad to send the website to purchase the compact disc player and a list of music. The envelopes inside had the same preprinted smiley face as previous envelopes and contained several strips that tested presumptive positive for a usable quantity of Suboxone.

On the same day, Sergeant Whitford inspected a fifth envelope addressed to Ryan, this time from defendant. This envelope contained a letter, two books of stamps, and no contraband. Sergeant Whitford compared this envelope with the envelope sent to Brad, and concluded that the handwriting was "similar, but different." Sergeant Whitford did not seize or take photographs of the fifth envelope because its contents were innocent. Instead, she placed it back in circulation for Ryan.

Six days later, Sergeant Whitford monitored another phone call. This time an inmate other than Ryan called the number associated with defendant. Sergeant Whitford recognized Brad's voice on the recording because she had previously listened to around 20 of his calls. Brad told the woman that he was calling "for Ryan." Brad also said Ryan loved the woman on the phone and that Ryan's phone privileges had been revoked for a few weeks. Brad relayed Ryan's request for a "money pack" via a Green Dot card, a common way for inmates to send and receive money.

Two days later, Sergeant Whitford monitored a fourth phone call. Sergeant Whitford again identified Brad's voice on the phone calling the number on file for

4

defendant. Brad told the woman who answered that he was calling "for Ryan." Brad told the woman Ryan missed her and Ryan wanted "his home girl" to write because he had not heard from her in a long time. Brad told the woman that "[t]ime goes smooth" when Ryan was in contact with his homegirl, but in the contest between his homegirl and the woman on the phone, the woman on the phone always won because Ryan loved her. The woman then read a number to Brad that Sergeant Whitford believed was a Green Dot card number. The woman asked Brad to tell Ryan that she loved him and wanted him to come home.

Twelve days later, Sergeant Whitford listened to a fifth phone call. Sergeant Whitford could not recognize the voice of the inmate on this recording, who said he was calling "for Ryan." The inmate used defendant's name, asking, "[I]s Stacey there," and the woman said, "Yeah." Stacey said she had not written because she was busy. The inmate asked for another Green Dot card for Ryan, but Stacey said it would take a few days to get it because she just bought a house for her and Ryan. She asked the inmate to tell Ryan she loved him.

About three weeks later, Sergeant Whitford listened to a sixth and final call. An inmate whose voice Sergeant Whitford could not identify called the number on file for defendant and asked, "[I]s this Stacey," and the woman replied, "Yeah." The inmate told Stacey that Ryan "sen[t] his love," discussed when Ryan would be granted privileges again, and asked for a Green Dot card of $100. Stacey told the inmate she had a problem: Her house had been "raided," the police took all her money, she broke her ankle, and she spent the night in jail for an unrelated offense. Stacey told the inmate that when she was in jail her house was robbed and "[t]hey stole [her] Suboxone strips."

Defendant was charged with one count of conspiracy to bring a controlled substance into a state prison and four counts of sending a controlled substance into a state prison. Before trial, a criminalist tested three of the four substances from the envelopes; two tested positive for Suboxone and one tested positive for heroin. The parties

5

stipulated to the results of these three tests. There was no further testing conducted on the substances other than the presumptive positive test Sergeant Whitford conducted during her investigation.

At trial, Danielle B. was called to testify and confessed to mailing the controlled substances to the prison. Danielle, who has struggled with substance abuse her whole life, could not remember many details of the crimes she claimed to have committed. The prosecutor also elicited answers from Danielle that were inconsistent with the methods of mailing the controlled substances observed by Sergeant Whitford.

Defendant was convicted on all five charges. At her sentencing hearing, the court imposed the midterm sentence of three years for the conspiracy conviction. The court stayed execution of sentence for the sending a controlled substance convictions without imposing any sentence.

Defendant appeals.

DISCUSSION

I

*Substantial Evidence Supports Defendant's Convictions*

Defendant argues the evidence was insufficient to support the inference that she mailed controlled substances to the prison and that she was a party to a conspiracy to do so. We review for substantial evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Thus, we consider the entire record in a light favorable to the judgment to determine "whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 932; see *Johnson*, at p. 576.) We reassess neither the evidence nor the credibility of witnesses. (*People v. Jennings* (2010) 50 Cal.4th 616, 638.) The standard of review does not change because the conviction rests on circumstantial evidence or where the issue is the identity of the defendant. (*Bean*, at pp. 932, 933.) If the evidence at trial suggests one inference of guilt and another inference of innocence, then the jury must acquit the

6

defendant. (*Id*. at p. 932.) The same is not true of an appellate court—if the record reasonably justifies the jury's findings, the appellate court must affirm the conviction. (*Id*. at p. 933.)

A

*Substantial Evidence Supports Defendant's Convictions For*

*Sending A Controlled Substance Into A State Prison*

To violate section 4573, a defendant must knowingly send a usable amount of a controlled substance into a state prison. (*People v. Low* (2010) 49 Cal.4th 372, 379, fn. 5, 381, 386.) Defendant does not challenge any of the elements of the crime. Defendant's sole contention is that the evidence was insufficient to prove that she was the person who mailed the controlled substances into the prison. We disagree.

The evidence revealed that Ryan knew a woman by defendant's name who could be contacted at a certain phone number. On phone calls with a person at that phone number, the person identified herself by defendant's first name.[3] That person also referenced items mailed to Ryan and Brad. In the referenced mailings, which appeared similar to each other and similar to the first two mailings sent to Ryan given the messages of love in felt tip pen and the items each mailing contained, were controlled substances. In one of the calls the person who answered the phone claimed someone stole her Suboxone, the controlled substance Sergeant Whitford found in three of the four mailings. From this evidence, a jury could reasonably find defendant was the person on the phone calls with Ryan and other inmates and that she sent the mailings referenced in

---

[3]      We note that the appellate record lacks the recordings of defendant's phone calls. It is defendant's burden to supply a record sufficient for our review. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532-1533.) The jury listened to the recordings and judged for itself whether the person being called in each recording was the same person who identified herself by defendant's first name in the fifth and sixth phone calls. Without the recordings to review, we must defer to the jury's implied finding that the person in the recordings was the same person in every phone call. (*Ibid*.)

those phone calls, which contained controlled substances. Given those mailings' similarity to the first two mailings sent to Ryan that contained controlled substances, a jury could reasonably conclude defendant mailed those as well.

Defendant disagrees, contending that no evidence was presented at trial to show she was Ryan's girlfriend at the time the controlled substances were mailed into the prison. From the showing of substantial evidence demonstrated *ante*, we do not see the relevance of this contention. The precise nature of defendant's relationship with Ryan is not dispositive on the question of whether defendant mailed controlled substances into a state prison, and thus we do not discuss the particulars of defendant's relationship with Ryan further. It is enough that Ryan identified defendant as the person at the phone number listed in his records and that a woman with defendant's first name answered the phone when that number was called. A jury could reasonably infer that the person answering the calls was defendant.

Defendant also argues that the substance from the first envelope was insufficiently tested. We disagree. The parties stipulated to the identity of three of the substances: Two were Suboxone and one was heroin. Given the presumptively positive test of the first substance for Suboxone, the fact that it was hidden under the flap of the envelope like the other two envelopes containing Suboxone, the phone conversation where Stacey admitted to possessing Suboxone, and the stipulation regarding the identity of the other three substances, a jury could reasonably infer the first substance was also Suboxone.

Defendant contends there was insufficient evidence linking her to each envelope. As described above, we disagree. The delivery method of each mailing was identical: Sergeant Whitford found drugs hidden under the flaps of envelopes addressed to an inmate. Each envelope was sent using a fictitious name that was not associated with the return address. Three of the envelopes had the same preprinted smiley face, and the writing on each envelope was in felt tip pen. In addition to controlled substances, each

8

mailing contained a love note addressed to the recipient. Given these consistencies, a jury could reasonably infer that one person sent each envelope.

In addition, the overlapping content of defendant's phone calls and the mailings allow a jury to reasonably infer defendant sent the mailings containing the controlled substances. In the fourth letter, which was addressed to Brad, the writer indicated that she purchased a house for herself and Brad where they would live once he was released. In the fifth phone call, Stacey indicated that she bought a house for herself and Ryan. This letter and the phone call were about three weeks apart. The letter to Brad also discussed a compact disc player, which Ryan and the woman using defendant's phone number discussed during the first call; the letter to Brad and the call to Ryan were nine days apart. At trial, Sergeant Whitford testified it was common for people to send letters to one inmate when the contents of the letters were meant for another. A jury could reasonably conclude this happened here given that Brad communicated with Stacey on behalf of Ryan and Stacey discussed the contents of the letter with Ryan on other phone calls. Given this reasonable inference, substantial evidence supports the jury's implied finding that the person on the phone calls with Brad and Ryan was the person who sent letters to Brad and Ryan.

Defendant argues only one of the calls mentioned drugs and no evidence was introduced that defendant possessed Suboxone illegally. Whether defendant illegally possessed Suboxone is irrelevant to whether she unlawfully sent it into a state prison. (See *People v. Low*, *supra*, 49 Cal.4th at p. 381.)

Defendant points out that no handwriting or fingerprint analysis was conducted at trial to show she handled the mailings sent to the prison. We find this argument meritless. Again, given the consistent methods of the mailings, the calls to a phone number identified in records as defendant's phone number, the recipient of the phone calls answering to defendant's first name, the person receiving the phone calls admitting to possessing Suboxone, and that person admitting to sending numerous mailings

9

containing items found in the mailings also containing controlled substances, a jury could reasonably infer beyond a reasonable doubt that defendant was the person mailing the controlled substances without the added evidence of handwriting or fingerprint analyses.

Defendant suggests that Sergeant Whitford should have investigated into the fictitious names and their association with the return addresses on each envelope. This argument is meritless. On review for substantial evidence, defendant must show the evidence presented was entirely insufficient to support the judgment below. As discussed *ante*, this is not the case here.

Defendant's contention that Danielle's testimony requires overturning her conviction also lacks merit. It is for the jury to assess the credibility of witnesses, not an appellate court. (*People v. Jennings*, *supra*, 50 Cal.4th at p. 638.) In this case, the jury did not believe Danielle's testimony, and the record provides ample justification for that conclusion. For example, Danielle could not remember how many envelopes were sent or the shape and size of those envelopes. Danielle testified that she sprayed heroin on the letters she wrote to Ryan, rather than attaching lumps of heroin under the flap of the envelope; she later said she could not remember how she sent the heroin. Danielle also testified that the heroin was a white powder before saying that it was tar heroin. She also could not recall how the Suboxone was sent, testifying that she melted it onto the letters rather than concealing it under the flaps of the envelopes. She gave inconsistent answers regarding the color of the Suboxone she sent, initially saying it was white during an interview with the prosecution, before testifying that it was orange. She further could not recall to whom she addressed the letters. Danielle further admitted that defendant drove Danielle to the courthouse the morning of her testimony. Thus, there is ample evidence to support the jury's determination that Danielle lacked credibility.

Accordingly, substantial evidence supports defendant's convictions for all four counts of sending a controlled substance into a state prison.

10

B

*Substantial Evidence Supports Defendant's Conspiracy Conviction*

The elements of conspiracy are: (1) an agreement to commit a crime; (2) specific intent to commit the crime; and (3) an overt act in furtherance of the conspiracy. (CALCRIM No. 415.) Circumstantial evidence, such as the parties' relationship and conduct, can suffice for the jury to infer the existence of a conspiracy. (*People v. Maciel* (2013) 57 Cal.4th 482, 515-516.) On appeal, defendant does not dispute the existence of a conspiracy but again asserts that the evidence was insufficient to support the inference that she was a party to a conspiracy. We disagree.

The crux of defendant's argument to overturn the conspiracy conviction is that there was no direct evidence of conspiracy, relying on the prosecutor's statements to this effect during closing arguments. This reliance is misplaced. Circumstantial evidence— such as the conduct of the parties and their relationship (*People v. Maciel*, *supra*, 57 Cal.4th at pp. 515-516)—is often the only method of inferring the existence of a conspiracy. Such is the case here.

Defendant's phone number was on file with the prison's database, where Ryan listed her as his girlfriend. A woman on calls to this phone number twice responded to defendant's first name. Once again, it was for the jury to infer that this was the same woman on the phone in each recording. Especially considering the recordings were not provided with the record, we must presume the jury's conclusion was reasonable. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532 [on matters in which record is silent, the appellate court indulges all presumptions in favor of the judgment].)

Further, these conversations often discuss the sending and receiving of packages. Packages similar to those discussed were found containing controlled substances. In the only call that failed to mention sending or receiving packages, the woman on the phone who had defendant's first name said that someone stole her Suboxone strips. Taken

11

together, a reasonable jury could infer defendant conspired with Ryan (and other inmates) to send drugs into prison.

## II

### *Remand Is Necessary*

Under section 654, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions." (§ 654, subd. (a).) Where it applies, section 654 requires a trial court to first impose a sentence and then stay "execution of the duplicative sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 380.)

Here, the trial court did not impose a sentence for any of defendant's convictions for sending a controlled substance. Defendant does not address the sentencing issue in her appellate briefs. The People argue for remand to impose a sentence on these convictions before staying execution pursuant to section 654. We agree. Thus, we remand the matter and direct the trial court to impose sentence on defendant's convictions for sending a controlled substance into a state prison before staying their execution.

## DISPOSITION

Defendant's convictions are affirmed. The matter is remanded for the trial court to exercise its discretion in imposing sentence for counts II through V before staying execution of the sentence pursuant to section 654. It must then prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.


/s/
ROBIE, J.


We concur:


/s/
EARL, P. J.


/s/
HULL, J.