Filed 3/5/24  P. v. Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO MATEO LOPEZ,<br><br>    Defendant and Appellant. | H050372<br>(Santa Clara County<br>Super. Ct. No. C1119504) |

This matter is one of two pending appeals from defendant Fernando Mateo Lopez, who was convicted by a jury of second degree murder and other offenses with gang and firearm enhancements for a gang-related drive-by shooting.  A different panel of this court conditionally reversed the judgment in 2020 to allow the trial court to determine whether to strike previously mandatory firearm enhancements.  In this appeal, defendant contends the trial court abused its discretion on remand when it declined to strike those enhancements.  He also argues the gang and firearm enhancements must be reversed because of changes to the gang statute that became effective while this appeal was pending.[1]  For the reasons stated here, we will reverse the judgment and remand the matter for possible retrial on the gang and firearm enhancements.

---

[1] In defendant's other appeal (case No. H050242), which we dispose of by separate opinion, defendant challenges the trial court's denial of his petition for resentencing under former Penal Code section 1170.95 (now Penal Code section 1172.6).

## I.  TRIAL COURT PROCEEDINGS

The 2020 opinion affirming defendant's judgment on direct appeal accurately summarized the factual background and charges in the case:  "Defendant and four companions drove by a group of teenagers gathered in front of an apartment complex. They fired into the group, killing a 14-year-old girl and injuring three other teens. Defendant and Ricardo Salvador Diaz were charged after a preliminary hearing with: special circumstances murder (Pen. Code, §§ 187, 190.2, subd. (a)(21)–(22); count 1); five counts of attempted murder with premeditation (Pen. Code, §§ 187, 189, 664, subd. (a); counts 2 – 6); and three counts of shooting at an inhabited dwelling (Pen. Code, § 246; counts 7 – 9).  All counts were alleged to have been committed for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(4), (5)), and during which a principal intentionally used a firearm (an SKS assault rifle) to inflict great bodily injury or death on a person other than an accomplice (Pen. Code, § 12022.53, subds. (d), (e)(1))."  (*People v. Lopez* (June 17, 2020, H043949) [nonpub. opn.].)[2]  Defendant was tried with accomplice Primitivo Hernandez.  We summarize the trial evidence relevant to the limited issues raised in this new appeal.

### A.  ACCOMPLICE DIAZ'S TESTIMONY

Accomplice Ricardo Diaz testified for the prosecution against defendant.  He testified that he and Esmeling Bahena exchanged text messages in November 2011 about their windows having been damaged and wanting "to look for retaliation."  He was a Sureño gang member at the time.  Diaz had seen "Northerners" break his car windows and wanted to retaliate against "any Northerner that [they] saw."  Bahena proposed that they drive to Gilroy to pick up guns from people he knew.  Bahena picked up Diaz and Ramon Gutierrez.  They drove to Gilroy, where they met defendant and Primitivo

---

[2]  We have taken judicial notice of the records in case Nos. H043949 and H050242.

Hernandez. Defendant indicated he had guns, and the five men drove to defendant's house to get them.

Diaz testified that the men were seated in the following arrangement: Diaz drove, Bahena sat in the front passenger seat, defendant sat behind Diaz, Gutierrez sat in the middle back seat, and Hernandez sat in the remaining rear seat. Defendant retrieved from his house something wrapped in a big towel that was large enough to hold a rifle. The men agreed to go looking for "Nortenos." Using a handgun he got from defendant, Bahena fired at a suspected Norteño they drove past in Gilroy. The individual ran away, and Diaz drove the men back to Morgan Hill.

Bahena directed Diaz to a park where Norteños were known to hang out. The men saw a group standing nearby, and someone in the car said the group included Norteños. Diaz drove slowly past the group. Someone in the back seat fired five to seven shots at the group using an SKS rifle. Diaz did not see who fired the gun, but saw a muzzle flash on the right (passenger) side of the car. They drove from the scene after the shots were fired. Diaz pleaded guilty to one count of murder and one count of attempted murder related to the shooting.

## B. GANG EXPERT TESTIMONY

Sergeant Mario Ramirez of the Morgan Hill Police Department testified as an expert on the Norteño and Sureño gangs in Morgan Hill and Gilroy. The Sureño gang is associated with the color blue, the number 13, and the letter M (the 13th letter of the alphabet). The number and letter both refer to the Mexican Mafia, the parent organization that oversees the Sureño gang. They also use the nickname "Sur" to describe the gang. Tattoos can indicate gang affiliation, and a non-gang member who gets a gang-related tattoo is likely to be assaulted. Their rivals are the Norteños, who are associated with the color red, the number 14, and the letter N. Ramirez testified that the shooting occurred at a known meeting point for Norteño gang members.

Ramirez described that power, violence, and respect are important traits for Sureños. A gang gains power by committing crimes within the community, including "vandaliz[ing] areas by marking their territory, doing assaults on individuals." Retaliating against a rival gang shows that the gang is not weak.

Ramirez testified that the Sureño gang's primary activities include murder, assault with a deadly weapon (including shootings), vehicle theft, car break-ins, and vandalism. As evidence of a pattern of criminal gang activity, the prosecution relied on two cases resulting in multiple convictions. The first was a car vandalism case Ramirez personally investigated. Ramirez testified that the defendant in that case (Luis Pacheco) was a Sureño gang member who broke the windows of a Norteño gang member's car; Pacheco was convicted of vandalism. The second case led to the convictions of Julio Larios, Celso Flores, and Ricardo Montoya for assault with a deadly weapon with gang enhancements. Evidence about that case came from Gilroy Police Department Sergeant Chad Gallacinao, who testified that in May 2009 he witnessed four subjects beating someone with their hands and feet. One of them was also making stabbing motions toward the victim with a white metal object. The victim was wearing red clothing. Police found a screwdriver inside a blue bandana in the route used by one of the assailants to flee the scene. Based on Gallacinao's testimony and evidence of the assailants' tattoos, Ramirez opined that the three men were Sureño gang members.

Ramirez further opined that defendant and the others in the car at the time of the shooting were all Sureño gang members based on their tattoos and possession of gang paraphernalia. Ramirez's opinion was also informed by Diaz's admission that he was a Sureño gang member.

Posing a hypothetical similar to the facts of the case, the prosecutor asked Ramirez whether he believed the shooting was done for the benefit, in association with, or at the direction of a criminal street gang. Answering affirmatively, Ramirez explained the shooting benefited the gang because, "[b]y going and retaliating, going to a known

4

Norteno location, agreeing and going out looking for Nortenos to retaliate against, and shooting at a known Norteno location, the Sureno gang is showing power and showing that they are not going to be intimidated by rivals, the Nortenos." The shooting also helped "develop a reputation on the street that they are willing to commit violence and particularly willing to shoot individuals for their gang, and to show that they will not be intimidated by other individuals."

## C. VERDICTS, SENTENCING, AND CONDITIONAL REVERSAL

The jury acquitted defendant of first degree murder and convicted him of the lesser included offense of second degree murder on count 1. The jury also convicted defendant of attempted murder on counts 2 through 6, but found the premeditation allegations not true. And the jury convicted defendant of counts 7 through 9 as charged. Gang and firearm allegations were found true as to all counts. Defendant was sentenced to a 154-year prison term, consisting of 40 years to life on count 1; 32 years to life (consecutive) on count 2; 27 years four months to life (consecutive) on each of counts 3 through 5; 32 years to life (concurrent) on count 6; and 30 years to life (concurrent) on each of counts 7 through 9. Each count included a 25-years-to-life gun use enhancement under Penal Code section 12022.53.

The judgment was conditionally reversed in 2020 for the limited purpose of allowing the trial court to exercise its discretion to determine whether to strike the Penal Code section 12022.53 enhancements. (*People v. Lopez* (June 17, 2020, H043949) [nonpub. opn.].) On remand, the trial court declined to strike the enhancements, reasoning that "I do not find the interests of justice are served by exercising the limited discretion I have to strike or dismiss the enhancements."

## II. DISCUSSION

### A. STATUTORY AMENDMENTS AFFECTING THE GANG ALLEGATIONS (ASSEM. BILL NO. 333)

Defendant argues he is entitled to the benefit of ameliorative changes to Penal Code section 186.22 enacted since his trial. (Unspecified statutory references are to the Penal Code.) The Attorney General agrees that those changes apply to defendant under the rule of *In re Estrada* (1965) 63 Cal.2d 740. But the Attorney General contends reversal is not required because any deviation from the current law is harmless beyond a reasonable doubt.

The jury was instructed according to section 186.22 as it existed at the time of defendant's trial: "To prove this allegation, the People must prove that: [¶] 1. The defendant committed the crime for the benefit of or in association with a criminal street gang; [¶] AND [¶] 2. The defendant intended to assist, further, or promote criminal conduct by gang members. [¶] A criminal street gang is any ongoing organization, association, or group of three or more persons, whether formal or informal: [¶] 1. That has a common name or common identifying sign or symbol; [¶] 2. That has, as one or more of its primary activities, the commission of murder, assault with a deadline weapon, auto theft, or vandalism; [¶] AND [¶] 3. Whose members, whether acting alone or together, engage in or have engaged in a pattern of criminal gang activity." The instructions defined a pattern of criminal gang activity as: "1. The commission of, attempted commission of, conspiracy to commit, or conviction of: any combination of two or more of the following crimes: murder, assault with a deadly weapon, auto theft, or vandalism; [¶] 2. At least one of those crimes was committed after September 26, 1988; [¶] 3. The most recent crime occurred within three years of one of the earlier crimes; [¶] AND [¶] 4. The crimes were committed on separate occasions, or were personally committed by two or more persons." The instruction indicated the crimes "that establish a pattern of criminal gang activity[] need not be gang-related." The jury

6

was informed that if it found defendant guilty of a crime in the current case, "you may consider that crime in deciding whether one of the group's primary activities was commission of that crime, and whether a pattern of criminal gang activity has been proved." And the jury was told that "[y]ou may not find that there was a pattern of criminal gang activity unless all of you agree that two or more crimes that satisfy these requirements were committed, but you do not all have to agree on which crimes were committed."

### 1. The Jury Instructions Are Inconsistent with Amended Section 186.22

Assembly Bill No. 333 (2021–2022 Reg. Sess.) amended section 186.22 in several substantive areas. (Stats. 2021, ch. 699, § 3.) It changed the definition of "criminal street gang" in section 186.22 to require collective (as opposed to individual) criminal acts forming "a pattern of criminal gang activity" by gang members. (§ 186.22, subd. (f).) It similarly narrowed the "pattern of criminal gang activity" used to establish predicate offenses by requiring that "(1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity" may not include the currently charged offense. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*); § 186.22, subd. (e)(1), (2).) It "narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*Tran*, at p. 1206.) And it removed felony vandalism from the list of offenses that can show a pattern of criminal gang activity or a gang's primary activities. (See *People v. Lopez* (2022) 82 Cal.App.5th 1, 20.)

The parties agree that the jury instructions were accurate when provided, but that they do not reflect the elements of the gang enhancement as it now exists after Assembly

7

Bill No. 333. The prosecutor's closing argument was similarly inconsistent with current law. For example, the prosecutor argued that the Sureño gang's primary activities included vandalism. The prosecutor also presented the vandalism predicate offense conviction and "this present murder" as part of the gang's pattern of criminal gang activity.

### 2. The Effect of the Instructions was Not Harmless Beyond a Reasonable Doubt

Because the instructional error implicates defendant's federal constitutional right to a jury trial, we apply the prejudice standard of *Chapman v. California* (1967) 386 U.S. 18. (*Tran*, *supra*, 13 Cal.5th at p. 1207; *People v. Cooper* (2023) 14 Cal.5th 735, 742–743.) Under that standard, the Attorney General must show beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Quartermain* (1997) 16 Cal.4th 600, 621 (*Quartermain*).) "In other words, the alleged error must be 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' " (*People v. Low* (2010) 49 Cal.4th 372, 392–393.) "[T]he appropriate inquiry is 'not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' " (*Quartermain*, at p. 621.)

Reviewing the evidence along with the now-deficient instructions, we cannot conclude that the instructional error was harmless beyond a reasonable doubt. One of the two predicate offenses involved felony vandalism, which can no longer be used to show a pattern of criminal gang activity. The same is true as to defendant's culpability for the charged crimes, which the instructions allowed the jury to consider. And the jury was informed that it need not unanimously decide which of the predicate offenses satisfied the gang statute. We acknowledge that one predicate prosecution produced three convictions for assault with a deadly weapon arising from a single beating carried out by individuals the gang expert opined were gang members, and therefore arguably could meet the

8

current requirement of two offenses committed by two or more gang members. (§ 186.22, subd. (e)(1)(A) [assault with a deadly weapon is a qualifying predicate offense].) But the record does not indicate whether the jury relied on those offenses versus others presented, including the charged crimes, to find a pattern of criminal gang activity.

Nor can we find the error harmless in relation to the Legislature's narrowing of what it means for an offense to have commonly benefitted a street gang. Under current law, the prosecution must show that predicate offenses "commonly benefited a criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).) The jury instructions in defendant's trial did not specify that the common benefit had to be more than reputational. Although there was evidence that the predicate assaults were committed by gang members and were gang-related, there was no evidence presented about the reason for the attack. The jury therefore could have found a merely reputational benefit to the Sureño gang. Similarly, the gang expert testified the charged offenses helped "develop a reputation on the street that [Sureño gang members] are willing to commit violence and particularly willing to shoot individuals for their gang, and to show that they will not be intimidated by other individuals." A rational jury could have relied on that now-improper basis. We acknowledge that retaliation remains a valid basis for a common benefit finding under current law, and the gang expert also testified that the shooting benefited the gang by showing its willingness to retaliate. (§ 186.22, subd. (g) ["Examples of a common benefit that are more than reputational may include ... retaliation."].) But here again, the record does not show that the jury relied on the valid basis instead of the now-invalid basis.

The Attorney General's arguments misconstrue the prejudice standard. He contends, for example, that the pertinent question is "whether the crimes contained in [the predicate assault prosecution] suffice to prove the gang enhancement beyond a reasonable doubt." He also discusses whether it was "shown beyond a reasonable doubt

9

that [defendant's] motivation was gang-related rather than personal." But that is not the applicable standard. We do not simply elide invalid theories and evidence to determine whether the remaining evidence would sustain the jury's verdict. Instead, we review all the evidence and instructions from defendant's trial and determine whether we can conclude beyond a reasonable doubt that the jury's decision " 'actually rendered in *this* trial was surely unattributable to the error.' " (*Quartermain*, *supra*, 16 Cal.4th at p. 621.) Even assuming the single predicate prosecution resulting in multiple assault convictions can satisfy the current statute, that does not render harmless the error in instructing the jury that it could use the vandalism conviction and the current charges in determining whether the gang allegation was true.

The Attorney General asserts defendant is "essentially making the untenable argument that the Sureños do not qualify as a gang under the new language in section 186.22." To the contrary, we interpret defendant's argument to be that the existence of a criminal street gang must be proven by competent evidence to a jury properly instructed in what is now the applicable law. Because we do not find the instructional error harmless beyond a reasonable doubt, the true findings on the gang allegations must be reversed and the matter remanded for possible retrial on those allegations. (*People v. Salgado* (2022) 82 Cal.App.5th 376, 380–381.)

## B. The Gang-related Firearm Allegations

The jury found true firearm special allegations as to all counts. (Pen. Code, § 12022.53, subds. (e)(1), (d).) Section 12022.53, subdivision (d) adds an indeterminate 25-years-to-life sentencing enhancement for a person who personally and intentionally discharges a firearm and proximately causes great bodily injury or death to a person other than an accomplice. That enhancement can be applied to any principal in the commission of the offense if the prosecution pleads and proves that the person "violated subdivision (b) of Section 186.22." (§ 12022.53, subd. (e)(1)(A).) A true finding on the gang allegation is thus an element of the firearm allegation.

10

We invited supplemental briefing about the effect a reversal of the true findings on the gang allegations would have on the firearm enhancements. We accept the Attorney General's concession that our reversal of the gang enhancements necessitates reversal of the firearm enhancements because the firearm enhancements "were in part dependent on the jury's finding with regard to the gang enhancements."

The Attorney General urges that any retrial be limited to whether defendant violated section 186.22, subdivision (b) because that is the only element of the section 12022.53 firearm allegations affected by Assembly Bill No. 333. Defendant does not argue otherwise, and we see no legal basis to require retrial of the other elements.

Because the true findings as to the firearm allegations will be reversed, we do not reach defendant's argument about the trial court's decision not to strike the associated enhancements under section 1385.

### III.    DISPOSITION

The judgment is reversed. The matter is remanded for possible retrial on the gang allegations. If upon retrial the gang allegations are found true, the gang enhancements and firearm enhancements shall be reinstated. If no retrial occurs or the gang allegations are not found true, the gang enhancements and firearm enhancements shall be stricken. The trial court must then fully resentence defendant.

_____

Grover, Acting P.J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

**H050372**
*The People v. Lopez*